**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**CASE NO: 3:25-cv-737-WWB-MCR**

CYNTHIA CRAWFORD and ELIZABETH
HOLLON,

    Plaintiffs,

v.

CIVIL AIR PATROL, INC. and JOSHUA
KARSTEN WELCH,

    Defendants.

_____/

## DEFENDANT CIVIL AIR PATROL, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendant Civil Air Patrol, Inc. ("CAP"), by undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts I, II, III, VIII, IX, X, and XI of Plaintiffs' First Amended Complaint ("Complaint") for failure to state a claim upon which relief can be granted. In support, CAP states as follows:

**I. INTRODUCTION**

This case arises from alleged events at a Civil Air Patrol ("CAP") cadet encampment in July 2022. Plaintiffs Cynthia Crawford and Elizabeth Hollon assert fifteen counts against CAP and co-defendant Joshua Welch. Seven of those counts against CAP—the Section 42 U.S.C. § 1983 claims (Counts I-III),

1

vicarious liability (Count VIII), breach of contract (Counts IX-X), and intentional infliction of emotional distress (Count XI)—fail as a matter of law.

42 U.S.C. § 1983 provides a cause of action only against persons acting under color of *state* law. *West v. Atkins*, 487 U.S. 42, 48 108 S. Ct. 2250, 2254-55 (1988). The Section 1983 claims fail because Plaintiffs do not allege, and cannot truthfully allege, that CAP was acting under color of *state* law.

For constitutional violations by private entities acting under color of *federal* law, the analogous remedy would be a *Bivens* action[1]—but the Supreme Court has long held that there is no private right of action under *Bivens* for damages against private entities. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001). Thus, whether CAP is characterized as acting under color of state law or federal law, Plaintiffs have no viable claim.

Moreover, Congress has expressly provided by statute that CAP "is not an instrumentality of the Federal Government for any purpose "except when performing Air Force Assigned Missions." 10 U.S.C. § 9491(2). The cadet encampment was not an Air Force Assigned Mission—it was a CAP corporate training activity—and therefore CAP was operating as a private nonprofit corporation, not a federal actor.

Plaintiff Hollon's vicarious liability claim fails because co-defendant Welch was a volunteer cadet, not CAP's employee, and his alleged intentional assault was outside any scope of agency. Plaintiffs' breach of contract claims fail

---

[1] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

2

because CAP's internal regulations are governance documents and do not constitute enforceable contracts with members. Plaintiff Hollon's intentional infliction of emotional distress ("IIED") claim fails because CAP's alleged institutional responses, even if inadequate, do not rise to the level of "outrageous" conduct required under Florida law.

## II. STATEMENT OF FACTS

### A. Civil Air Patrol's Organizational Structure

CAP is a nonprofit corporation federally chartered under 36 U.S.C. § 40301. It is one of dozens of "patriotic and national organizations" chartered by Congress, alongside the American Legion, Boy Scouts of America, Girl Scouts of the USA, and others. 36 U.S.C. Subtitle II, Part B.

CAP's purposes include encouraging aviation and maintaining air supremacy, providing aviation education, and developing the voluntary contribution of citizens to the public welfare. 36 U.S.C. § 40302. CAP operates youth cadet programs for members ages 12-21 and senior member programs for adults.

While CAP is designated as the "civilian auxiliary of the Air Force," this auxiliary status has specific limitations. CAP is a volunteer civilian auxiliary "*when the services of the Civil Air Patrol are used by any department or agency in any branch of the Federal Government*." 10 U.S.C. § 9492(a) (emphasis added). Congress expressly provided that "*the Civil Air Patrol is not an instrumentality of the Federal Government for any purpose*," except when

conducting missions assigned by the Secretary of the Air Force. 10 U.S.C. § 9491(2), § 9492(b)(2).

**B. The July 2022 Encampment**

In July 2022, Plaintiff Elizabeth Hollon participated in a CAP cadet encampment at Camp Blanding in Clay County, Florida. (Doc 12 ¶ 48.) The Complaint describes this as a "CAP encampment" and "CAP-sponsored encampment"—a training activity for cadets. (Doc 12 ¶¶ 48, 238.)

The Complaint alleges that on July 16, 2022, co-defendant Joshua Welch, then 18 years old, committed battery against Hollon, then 16 years old, and took non-consensual photographs of her. (Doc 12 ¶¶ 56-60.) The Complaint further alleges that CAP leadership responded inadequately to this incident, destroyed evidence, and subsequently retaliated against Hollon and her mother for reporting the incident to law enforcement. (Doc 12 ¶¶ 62-70, 110-134.)

Critically, **the Complaint does not allege that the July 2022 encampment was an Air Force Assigned Mission**. The encampment was a CAP corporate cadet training activity—not a mission assigned by the Secretary of the Air Force.

### III. MOTION TO DISMISS STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The Court must accept well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Legal conclusions couched as factual allegations are not entitled to the assumption of truth. *Id.* at 679.

## IV. ARGUMENT

### A. Counts I, II, and III Should Be Dismissed Because CAP Is Not Subject to § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed *by a person acting under color of state law*." *West v. Atkins*, 487 U.S. 42, 48 (1988) (emphasis added). Plaintiffs do not allege, nor could they allege in good faith, that CAP was acting under color of state law during the July 2022 encampment. For this reason alone, all claims against CAP based on § 1983 - Counts I, II, and III - must be dismissed, with prejudice.

### *1. There Is No Private Right of Action Against Private Entities for Alleged Constitutional Violations*

Plaintiffs' allegation that CAP acted "under color of federal law" when it allegedly violated Plaintiffs' federal constitutional rights does not state a cause of

5

action under § 1983 or the analogous federal cause of action under *Bivens*.² The U.S. Supreme Court has long held that there is no private right of action, pursuant to *Bivens*, for damages against private entities acting under color of federal law. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001).

In *Malesko*, the Supreme Court rejected the request to extend the *Bivens* implied private right of action for damages for violation of a citizen's federal constitutional rights to a new category of defendants—***private*** entities operating under color of federal law. *Id.* at 63.

Accordingly, the Eleventh Circuit has applied *Malesko* to affirm dismissal of constitutional claims against private entities. *See Harvey v. United States*, 770 F. App'x 949, 954 (11th Cir. 2019) (affirming dismissal of constitutional claims against Public Storage, a private entity, because "the Supreme Court has foreclosed *Bivens* lawsuits against private corporations in this context," citing *Malesko*). *See also Kauffman v. Anglo-American Sch. of Sofia*, 28 F.3d 1223, 1224 (D.C. Cir. 1994) (holding that Bivens liability did not apply to a private school that received some federal funding to educate children of State Department diplomats, even though the school was "constrained by the Constitution in some or all of its acts solely because of lesser links to the federal government…"); *see also Meuse v. Pane*, 322 F. Supp. 2d 36, 38-39 (D. Mass. 2004) ("Section

---

²In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights. However, in *Correctional Services Corp. v. Malesko*, the Supreme Court held that *Bivens'* limited holding may not be extended to confer a right of action for damages against private entities acting under color of federal law. 534 U.S. at 63.

6

1983 applies to persons acting 'under color of state law' and not to persons acting pursuant to federal law." Moreover, "a *Bivens* claim is simply not available against a private entity even if that entity is acting under the color of federal law.").

Thus, as to CAP, a private entity, whether or not it was acting under the color of federal law, Plaintiffs have no private right of action for damages for alleged constitutional violations. Any attempt by Plaintiffs to amend to state a cause of action for damages for alleged constitutional violations would be futile and therefore these claims should be dismissed with prejudice.

### *2. The Statutory Framework Expressly Negates Federal Instrumentality Status*

Even if Plaintiffs could maintain a constitutional claim against CAP, they cannot establish that CAP was acting under color of state *or* federal law. Congress has established a clear statutory framework governing CAP's relationship to the federal government. 10 U.S.C. § 9491 provides:

> *(1) The Civil Air Patrol is a nonprofit corporation that is federally chartered under section 40301 of title 36.*
> *(2) Except as provided in section 9492(b)(2) of this title, the Civil Air Patrol is not an instrumentality of the Federal Government for any purpose.*

The sole exception is found in 10 U.S.C. § 9492(b)(2): "The Civil Air Patrol shall be deemed to be an instrumentality of the United States with respect to any act or omission of the Civil Air Patrol . . . *in carrying out a mission assigned by the Secretary of the Air Force*." (emphasis added).

7

This statutory scheme creates a bright-line rule: CAP is a federal instrumentality *only* when performing Air Force Assigned Missions ("AFAMs"). At all other times, CAP operates as a private nonprofit corporation.

### *3. The July 2022 Encampment Was Not an Air Force Assigned Mission*

The Complaint does not allege—and cannot allege—that the July 2022 cadet encampment at Camp Blanding was an Air Force Assigned Mission. The Complaint characterizes the event as a "CAP encampment" (Doc 12 ¶ 48) and a "CAP-sponsored encampment" (Doc 12 ¶ 238)—a corporate training activity for cadets.

AFAMs are specifically designated missions formally tasked by the Air Force with an assigned mission number, such as search and rescue operations, disaster relief, and homeland security activities. Cadet training encampments are internal CAP organizational activities conducted under CAP's corporate authority—not federally assigned missions.

Because the encampment was not an AFAM, the statutory exception in § 9492(b)(2) does not apply. Under § 9491(2), CAP was therefore "not an instrumentality of the Federal Government for any purpose."

### *4. Plaintiffs' Allegations Do Not Establish State or Federal Action*

Plaintiffs allege that CAP acted under color of federal law because it is: (1) federally chartered; (2) the Air Force auxiliary; (3) a recipient of federal funding; and (4) operating under federal authority. (Doc 12 ¶¶ 171, 181, 190.) None of these factors creates federal action under controlling Supreme Court precedent.

8

**Federal Charter:** In *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522 (1987), the Supreme Court held that a federal charter does not render an organization a government actor. "The fact that Congress granted it a corporate charter does not render the USOC a Government agent. All corporations act under charters granted by a government . . . . They do not thereby lose their essentially private character." *Id.* at 543.

**Federal Funding:** In *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), the Court held that a private school was not a state actor despite receiving 90-99% of its funding from public sources. "[A]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Id.* at 841.

**Auxiliary Status and Federal Authority:** CAP's designation as the civilian auxiliary of the Air Force does not transform its private activities into federal action. Congress expressly limited this status: CAP acts as an auxiliary "*when the services of the Civil Air Patrol are used by any department or agency*." 10 U.S.C. § 9492(a). The cadet training programs at issue were not services "used by" the Air Force.

## *5. The Holding in Campbell v. Civil Air Patrol Is Directly On Point*

These issues have been addressed in *Campbell v. Civil Air Patrol*, 131 F. Supp. 2d 1303 (M.D. Ala. 2001), where the court held that plaintiffs did not satisfy the public function test because the alleged unconstitutional act was unrelated to the private entity's public function. *Id.* at 1312. The plaintiffs in

9

*Campbell* were employees of CAP who sued CAP and the Air Force after they were terminated without notice and an opportunity for a hearing. *Id.* at 1306-09.

While the plaintiffs had focused on military-related duties as support for the public function test, the court noted that "the alleged unconstitutional conduct in this case does not arise from or pertain to CAP's non-combat air mission. Rather, the specific acts concern personnel matters in the supervision, discipline, and firing of CAP's employees." *Id.* at 1312. The court concluded that "the type of internal administrative/personnel issues at issue in this case are exactly the type of decisions that do not satisfy the public function analysis." *Id.* at 1313.

The same analysis applies here. The alleged conduct—CAP's response to the July 2022 incident, including disciplinary decisions, investigation procedures, and internal grievance processes—concerns internal administrative and personnel matters, not CAP's Air Force-assigned missions. These are exactly the type of decisions that do not satisfy the public function analysis.

Because CAP is a private entity, and Plaintiffs have no private right of action for alleged constitutional violations against private entities, Counts I, II, and III fail and must be dismissed with prejudice, as a matter of law.

**B. Count VIII Should Be Dismissed Because Welch Was Not CAP's Employee and His Conduct Was Outside Any Scope of Agency**

Count VIII asserts that CAP is vicariously liable for Welch's tortious conduct under respondeat superior. This claim fails for two independent reasons:

10

(1) Welch was not CAP's employee, and (2) even if an agency relationship existed, Welch's alleged intentional assault was outside any scope of agency.

## 1. Welch Was Not CAP's Employee

Vicarious liability under respondeat superior requires an employer-employee relationship. *See Iglesia Cristiana La Casa Del Señor, Inc. v. L.M.*, 783 So. 2d 353, 357 (Fla. 3d DCA 2001). The Complaint alleges that Welch was a "cadet member" of CAP (Doc 12 ¶ 235)—not an employee. CAP cadets are volunteer participants in a youth development program, not paid employees.[3]

The Complaint attempts to establish agency by alleging that Welch was "assigned to the position of night watch cadre" (Doc 12 ¶ 236) and "acting under color of authority for CAP" (Doc 12 ¶ 53). But a volunteer's assignment to a supervisory role at a training camp does not create an employment relationship. Cadets do not receive wages, are not subject to CAP's control in the manner of employees, and do not have an employment contract with CAP.

## 2. Intentional Sexual Assault Is Outside Any Scope of Agency

Even if Welch could be considered CAP's agent, his alleged intentional assault was not within the scope of any agency. Under Florida law, an employer is vicariously liable only for torts committed within the scope of employment. An act is within the scope of employment if it is "of the kind [the employee] is employed to perform" and "actuated, at least in part, by a purpose to serve the

---

[3] CAPR 39-2, Chapter 1, A 1.1.1 Compensation. "Civil Air Patrol members are not employees of CAP; they are volunteers who provide their services for the public good without expectation or receipt of salary, pay, remuneration or compensation of any kind."

11

master." *Hennagan v. Dep't of Highway Safety & Motor Vehicles*, 467 So. 2d 748, 751 (Fla. 1st DCA 1985). Intentional sexual assault is "so clearly outside the scope of employment as to [not] be actionable as respondeat superior." *Iglesia Cristiana*, 783 So. 2d at 357-58. Welch's alleged assault on Hollon was not the kind of conduct he was assigned to perform as night watch cadre, was not actuated by any purpose to serve CAP, and served only Welch's personal interests.

The Complaint's allegation that CAP "ratified" Welch's conduct by failing to take disciplinary action (Doc 12 ¶ 241) does not save the claim. Ratification requires knowledge of the wrongful act and an affirmative manifestation of approval. Failure to punish is not ratification of wrongful conduct. As noted by the Court in *Salvato v. Miley* 790 F.3d 1286, 1296 (11th Cir. 2015):

> [W]hen plaintiffs [in a section 1983 action] are relying not on a pattern of unconstitutional conduct, but on a single incident, they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis before a court can hold the government liable on a ratification theory." *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1174 n.12 (11th Cir. 2001), *cert. granted, judgment vacated sub nom. Thomas v. Roberts*, 536 U.S. 953, 122 S. Ct. 2653, 153 L. Ed. 2d 829, (2002), *opinion reinstated*, 323 F.3d 950 (11th Cir. 2003). Only when "the authorized policymakers approve a subordinate's decision and the basis for it" have they "ratifi[ed]" that "decision." *Praprotnik*, 485 U.S. at 127, 108 S. Ct. at 926.

*Id.* at 1296.

Plaintiff Hollon's vicarious liability claim in Count VIII is due to be dismissed with prejudice.

## C. Counts IX and X Should Be Dismissed Because CAP's Internal Regulations Are Not Enforceable Contracts

Counts IX and X allege that CAP breached contractual obligations to Hollon and Crawford, respectively, by violating CAP's internal regulations. These claims fail because CAP's regulations do not constitute enforceable contracts with its members.

"As a preliminary matter, a federal statute or regulation does not inherently create a contractual relationship between an individual and the United States." *XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770, 787 (2015).

The United States Court of Appeals for the Federal Circuit has explained that "the general requirements of a binding contract with the United States are identical for both express and implied contracts." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (*citing Russell Corp. v. United States*, 210 Ct. Cl. 596, 537 F.2d 474, 482 (1976); and *Thermalon Indus. v. United States*, 34 Fed. Cl. 411, 414 (1995)). These general requirements are "(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance." *Lewis v. United States*, 70 F.3d 597, 600 (Fed. Cir. 1995) (*quoting City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230 (1991)). "When the United States is a party, **a fourth requirement is added**: the government representative whose conduct is relied upon must have actual authority to bind the government in contract." *Id.* [emphasis added](internal quotation marks omitted). The United States Supreme Court has stated generally that "absent some clear indication that the legislature

13

intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–66 (1985) (quoting *Dodge v. Bd. of Educ., 302 U.S*. 74, 79 (1937)). Policies, unlike contracts, are inherently subject to revision and repeal, and to construe policies or regulations as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of the government.

The Court in *Cottrell v. United States*, 42 Fed. Cl. 144, explained that similar strict limitations on contract liability are applicable regarding military policies, regulations, and procedures.

> Courts also reject arguments that military policies, regulations, or procedures constitute express or implied contracts. *See Army and Air Force Exch. Serv.*, 456 U.S. at 739-40; *House*, 14 Cl. Ct. at 36-37. Even when government officials "by act or word generate expectations in the persons they employ, and then disappoint them, [their actions] do not *ipso facto* create a contract liability." *Shaw v. United States*, 226 Ct. Cl. 240, 640 F.2d 1254, 1260 (Ct. Cl. 1981). As the court has previously stated, "contract liability enforceable under the Tucker Act does not extend to every agreement, understanding, or compact entered into by the Government." *Berry v. United States*, 27 Fed. Cl. 96, 100 (1992). Hence, contract claims, such as those for wrongful discharge and failure to promote, fail in the absence of an explicit agreement to the contrary. *See Army and Air Force Exch. Serv.*, 456 U.S. at 741; *Kania*, 650 F.2d at 268; *Darden*, 18 Cl. Ct. at 859; *House* [**15] , 14 Cl. Ct. at 36.
> 
> *Cottrell v. United States*, 42 Fed. Cl. 144, 150 (1998)

***1. CAP Regulations Are Internal Governance Documents, Not Contracts***

14

The Complaint alleges that CAP's regulations—CAPR 60-2, CAPR 35-1, CAPR 20-2, and others—created contractual duties to Plaintiffs. (Doc 12 ¶¶ 245, 253.) This theory fails as a matter of law.

As discussed in the preceding section, organizational bylaws, policies, and internal regulations do not ordinarily create enforceable contracts with members. CAP's regulations are internal governance documents that establish organizational policies and procedures—not contractual promises to individual members.

The regulations cited in the Complaint do not contain any language indicating they were intended to create enforceable contractual rights. They do not promise specific benefits to individual members or create remedies for violation. Rather, they establish organizational standards, reporting requirements, and disciplinary procedures—typical internal governance provisions that do not rise to the level of contracts. *Id.*

### *2. There Is No Consideration for an Alleged Contract*

A valid contract requires consideration. Volunteer membership in a nonprofit organization, without more, does not provide the bargained-for exchange necessary to form a contract. *Id.*

The Complaint alleges that "consideration" consisted of the ability to participate in CAP events and receive leadership opportunities. (Doc 12 ¶¶ 249, 257.) But these are benefits of membership, not bargained-for consideration. Members pay dues and volunteer their time; in exchange, they receive the

opportunity to participate. This mutual arrangement does not transform CAP's internal policies into binding contracts. *Id.*

### 3. CAP Regulations Do Not Create Private Rights of Action

Even if CAP's regulations could be construed as creating duties, they do not create privately enforceable rights. The regulations establish internal organizational standards and disciplinary procedures—not causes of action for individual members to enforce in court. Nothing in the regulations indicates an intent to create judicially enforceable rights. *See Id.*

## D. Count XI Should Be Dismissed Because CAP's Alleged Conduct Does Not Meet the Outrageousness Standard

Count XI asserts intentional infliction of emotional distress ("IIED") against CAP. Under Florida law, a person "who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *E. Airlines, Inc. v. King*, 557 So. 2d 574, 575-76 (Fla. 1990).

### 1. Elements of an IIED Claim

To state an IIED claim, a plaintiff must allege four essential elements: (1) the defendant deliberately or recklessly inflicted mental suffering on the plaintiff; (2) the defendant's conduct was outrageous; (3) the defendant's conduct caused the plaintiff's emotional distress; and (4) the plaintiff's emotional distress was severe. *Moore v. Pederson,* 806 F.3d 1036, 1053 (11th Cir. 2015); *Tillman v.*

16

*Orange Cnty.*, 519 F. App'x 632, 636 (11th Cir. 2013); *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985).

### *2. Plaintiff Fails to Allege Extreme and Outrageous Conduct*

As to the second element, a plaintiff must state facts which show that the defendant's actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co.,* 467 So. 2d at 278-79 (quoting Restatement (Second) of Torts § 46 (1965)); *see also Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012).

Florida law imposes on plaintiffs a "particularly high" standard with respect to the type of actions that constitute "outrageous conduct." *Pierre v. City of Miramar, Fla., Inc.*, 537 F. App'x 821, 827 (11th Cir. 2013); *Foreman v. City of Port St. Lucie,* 294 F. App'x 554, 557 (11th Cir. 2008). "It is not enough that the defendant's conduct was intentional, malicious, or that it demonstrated spite or ill will." *Thomas v. State*, 748 So. 2d 970, 985 (Fla. 1999). The conduct must be "truly outrageous." *Id.*

Further, the fact that the conduct at issue was tortious, criminal, intended to inflict emotional distress, or characterized by malice is insufficient in itself to constitute "outrageous" conduct. *E. Airlines, Inc.*, 557 So. 2d at 576; *Metro. Life Ins. Co.*, 467 So. 2d at 279.

When evaluating whether alleged conduct is sufficiently outrageous, "the court must make an objective determination, and the subjective response of the

person suffering emotional distress does not control." *Lincoln v. Fla. Gas Transmission Co.*, 608 F. App'x 721, 722 (11th Cir. 2015). Whether conduct is sufficiently "outrageous" to state an IIED claim is a question of law for the court to decide. *Id.*; *Vance v. S. Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1575 n.7 (11th Cir. 1993).

### *3. Institutional Responses Do Not Constitute Outrageous Conduct*

The Complaint alleges that CAP engaged in "outrageous" conduct by: (1) suspending Hollon after she was victimized; (2) allegedly destroying evidence; (3) subjecting her to ongoing retaliation; (4) making false statements about her character; and (5) creating a hostile environment. (Doc 12 ¶ 261.)

Even accepting these allegations as true, they describe institutional responses that Plaintiffs believe were inadequate or unfair—not conduct that is "atrocious" and "utterly intolerable." Organizations routinely face allegations of mishandling internal complaints, imposing unfair discipline, and favoring some members over others. Such institutional failures, however unfortunate, do not rise to the level of IIED.

Florida courts have consistently held that workplace discipline, even if wrongful, does not constitute IIED. *See, e.g., Lay v. Roux Labs., Inc.*, 379 So. 2d 451 (Fla. 1st DCA 1980) (discharge from employment not outrageous); *Ponton v. Scarfone*, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985) (wrongful termination not outrageous). CAP's alleged disciplinary decisions and institutional responses fall far short of the outrageousness standard.

### *4. The Appropriate Remedy Is Negligence, Not IIED*

Plaintiffs have asserted negligence claims (Counts VI and VII) based on the same underlying conduct. The IIED claim is an improper attempt to repackage negligence allegations as intentional tort claims. If CAP failed to adequately supervise cadets or respond appropriately to reports of misconduct, the remedy sounds in negligence—not IIED.

Count XI should be dismissed for failure to state a claim.

## V. CONCLUSION

For the foregoing reasons, CAP respectfully requests that this Court dismiss Counts I, II, III, VIII, IX, X, and XI of the First Amended Complaint with prejudice.

Respectfully submitted,

_____

**J. Andrew Talbert**
Florida Bar No.: 0106003
Quintairos, Prieto, Wood & Boyer, P.A.
114 East Gregory Street, 2nd Floor
Pensacola, FL 32502
Telephone:    (850) 434-6490
Facsimile:     (850) 434-6491
Atalbert@qpwblaw.com
*Counsel for Defendant Civil Air Patrol, Inc.*

## WORD COUNT CERTIFICATION

I HEREBY CERTIFY that the word count of this motion is 4667, which is within the 8000 word limit set by Local Rule 7.1(F).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 15, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/_____
**J. Andrew Talbert**
Florida Bar No.:  0106003