**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**CASE NO: 3:25-cv-737-WWB-MCR**

CYNTHIA CRAWFORD and ELIZABETH
HOLLON,

      Plaintiffs,

v.

CIVIL AIR PATROL, INC. and JOSHUA
KARSTEN WELCH,

      Defendants.

_____/

## DEFENDANT CIVIL AIR PATROL, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Defendant Civil Air Patrol, Inc. ("CAP"), by undersigned counsel, respectfully submits this Response in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint (the "Motion") and states as follows:

### I.  INTRODUCTION

After CAP filed its Motion to Dismiss the First Amended Complaint on December 15, 2025 (the "MTD"), Plaintiffs Cynthia Crawford and Elizabeth Hollon now seek leave to file a Second Amended Complaint ("SAC") that effectively concedes the central arguments raised in the MTD. The proposed SAC drops all three counts brought under 42 U.S.C. § 1983 - a tacit acknowledgment that CAP is not a state or federal actor, that there is no *Bivens* remedy against private entities under *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001), and that 10 U.S.C. § 9491(2) deprives CAP of federal-instrumentality status outside Air Force Assigned Missions. With those counts gone, the

1

entire federal-court foundation of this case now rests on Hollon's two Title IX counts (SAC Counts I and II).

The Court should deny leave to amend because the SAC is futile. Title IX prohibits sex-based discrimination only "under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). CAP's volunteer cadet program is not an "education program or activity" within the meaning of that statute, and the SAC pleads no facts that could plausibly establish otherwise — indeed, despite Title IX defaulting to this action's only federal anchor, the SAC adds no new factual allegations in support of those claims. The renumbered counts that mirror those challenged in CAP's pending MTD (vicarious liability, breach of contract, and intentional infliction of emotional distress) likewise remain defective for the same reasons set forth in the MTD. Moreover, the only attempt at curative pleading — a new factual section purporting to establish a "contractual relationship" between CAP and its members — is a recitation of legal labels that adds nothing substantive, and the breach-of-contract counts that depend on it now incorporate cross-references to paragraph numbers that, after the SAC's renumbering, do not actually identify any regulatory duty CAP allegedly owed to Plaintiffs.

Where every count of the proposed amended pleading is subject to dismissal under Rule 12(b)(6), leave to amend should be denied as futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262–63 (11th Cir. 2004). The Court should deny the Motion, rule on the pending MTD, and dismiss the federal counts of the First Amended Complaint with prejudice. Because Plaintiff Crawford has dropped her sole federal claim, she has no independent basis to remain in this Court at all. Once the federal claims are dismissed, the

Court should decline supplemental jurisdiction over the remaining state-law claims under 28 U.S.C. § 1367(c)(3).

## II. PROCEDURAL BACKGROUND

On October 22, 2025, Plaintiffs filed their First Amended Complaint, asserting fifteen counts in total — eleven against CAP and four against co-defendant Joshua Welch. (Doc 12.) The counts against CAP included three brought under 42 U.S.C. § 1983 (FAC Counts I–III), two brought under Title IX (FAC Counts IV–V), and six state-law counts (negligence, negligence per se, vicarious liability, two breach-of-contract counts, and intentional infliction of emotional distress) (FAC Counts VI–XI).

On December 15, 2025, CAP moved to dismiss seven of those counts - the three § 1983 counts, the vicarious-liability count, both breach-of-contract counts, and the IIED count. (See MTD.) That motion remains pending.

Rather than respond on the merits to CAP's arguments concerning the § 1983 counts, Plaintiffs now propose to amend a second time. The proposed SAC: (a) drops all three § 1983 counts entirely, leaving Title IX as the only federal claim in the case; (b) renumbers the surviving counts against CAP as I–VIII and the counts against Welch as IX–XII; (c) adds a new factual section labeled "CAP's Contractual Relationship with Members" (SAC ¶¶ 48–54) intended to bolster the breach-of-contract counts; and (d) makes no other substantive changes - the Title IX counts, in particular, are pled identically (other than renumbering) to the Title IX counts in the FAC.

Because the SAC drops Crawford's sole federal claim — Count III of the FAC, brought under 42 U.S.C. § 1983 — Crawford's only remaining claim against CAP is the state-law breach-of-contract count (SAC Count VII).

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), a court "should freely give leave [to amend] when justice so requires." Leave to amend, however, is "by no means automatic." The Supreme Court has identified five factors that justify denial of leave: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

A proposed amendment is futile where "the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010); *see also Hall*, 367 F.3d at 1262–63 ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). The standard for evaluating futility is therefore the same as that applied to a motion to dismiss under Rule 12(b)(6): the proposed amended complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth. *Id.* at 678–79.

### IV. ARGUMENT

#### A. Leave to Amend Should be Denied Because Plaintiffs' Proposed Title IX Counts Are Futile

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.

§ 1681(a). To state a claim, a plaintiff must plead facts plausibly establishing two threshold elements: (1) that the defendant operates an *education program or activity*, and (2) that the program or activity receives federal financial assistance. The SAC fails on the first element. CAP is a federally chartered nonprofit youth-development organization — not an "education program or activity" within the meaning of Title IX — and the SAC pleads no facts that could plausibly support a contrary conclusion.

### *1. Title IX Reaches Only An "Education Program or Activity" -- Not Every Federally Funded Organization*

Title IX is not a general-purpose anti-discrimination statute. It "applies to the educational, instructional, or training programs or activities of a recipient." *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 555 (3d Cir. 2017). The Civil Rights Restoration Act of 1987, 20 U.S.C. § 1687, defines "program or activity" by reference to the nature of the recipient entity:

> [T]he term "program or activity" and the term "program" mean all of the operations of . . . an entire corporation, partnership, or other private organization, or an entire sole proprietorship**—(i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole**; or (ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; . . . or (B) the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended . . . .

20 U.S.C. § 1687(3). In *Grove City College v. Bell*, 465 U.S. 555 (1984), the Supreme Court determined that the receipt of federal financial assistance by one part of an organization did not trigger institution wide Title IX coverage, but that coverage was limited to that part of an organization that received the federal funding. *See* 465 U.S. 555, 571-75. In response to *Grove City,* the Civil Rights Restoration Act broadened Title IX's reach, but it did not eliminate the threshold requirement that the defendant be an

"education program or activity" of the type Congress identified. Even an entity that receives federal funding is not subject to Title IX unless either (i) the funding extends to the entity "as a whole," (ii) the entity is "principally engaged in the business of providing education," or (iii) the funding extends to a discrete educational facility within the entity. 20 U.S.C. § 1687(3) The SAC pleads none of these alternatives. Moreover, as discussed in Section IV.A.5 below, Congress's own characterization of the federal funds appropriated for CAP — for operations, readiness, counter-drug activities, and capital procurement of aircraft and vehicles — confirms that this funding is not the kind of educational-program financial assistance Title IX reaches.

### 2. The SAC Does Not — and Cannot — Plausibly Plead That CAP's Cadet Program Is an "Education Program or Activity."

CAP is a nonprofit corporation federally chartered under 36 U.S.C. § 40301, alongside the American Legion, the Boy Scouts of America, the Girl Scouts of the USA, and dozens of other "patriotic and national organizations." *See* 36 U.S.C. Subtitle II, Part B. CAP's congressionally established purposes are to encourage and aid in the development of aviation, to encourage voluntary citizen contribution to the public welfare, to provide aviation education and training, and to assist the Department of the Air Force in fulfilling its noncombat mission. 36 U.S.C. § 40302. Education is one purpose among several. Thus, CAP is not "principally engaged in the business of providing education," 20 U.S.C. § 1687(3)(A)(ii), and the SAC does not allege otherwise.

The cadet program — the predicate of Plaintiffs' Title IX theory — is a youth-development program for members ages twelve through twenty-one, conducted through volunteer-led local squadrons, evening and weekend meetings, and occasional residential encampments. (SAC ¶¶ 24, 28–30, 55.) The July 2022 encampment itself was

6

a temporary training event held at Camp Blanding — a Florida National Guard training facility — not at a CAP-owned or CAP-operated educational campus. (SAC ¶ 55.) Cadets are not students in any conventional sense. They are not enrolled for academic credit, they do not receive degrees or state-licensed certifications, and they are not subject to a tuition-based regimen of formal instruction graded by educators.

Moreover, there is a fundamental variance between what the federal appropriation actually funds and the activities Plaintiffs invoke as the supposed "education program." Plaintiffs allege that CAP's "educational programs" include "leadership training, aerospace education, character development," squadron-level meetings, and similar youth-development activities. (SAC ¶¶ 172–174.) But Congress's appropriation to CAP — as detailed in Section IV.A.5 below — is directed to Air Force operational categories: operations, readiness, counter-drug and drug-demand-reduction missions, aircraft procurement, and vehicle procurement. The federal appropriation does not include a line item for cadet leadership instruction, character development, or aerospace education as such, and the SAC alleges no facts to the contrary. That disconnect is fatal under Title IX's program-or-activity framework: even if an isolated CAP activity could be described as "educational," Title IX coverage requires that federal financial assistance be "extended" to that program — not that it be extended to the organization for other, unrelated operational purposes. 20 U.S.C. § 1687(3)(A).

Where federal courts have applied Title IX outside the public-school setting, they have done so only after careful inquiry into whether the program is genuinely educational in character. The *Mercy Catholic* court - which held that an accredited graduate medical residency was an "education program" - articulated factors relevant to that inquiry,

7

including whether the entity provides "a program incrementally based on advancement," "a regimen of formal education," and a "structured relationship" akin to that "of a student-school relationship." 850 F.3d at 555. CAP's cadet program may include rank advancement, but it lacks the regimen of formal academic instruction, the structured student-school relationship, and the academic credentialing that define a Title IX-covered educational program.

In every Title IX case to reach the Supreme Court, the defendant has been a school, college, university, or other formal educational institution. *See, e.g.*, *Cannon v. University of Chicago*, 441 U.S. 677 (1979) (university medical school); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999) (public school district); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) (public school district); *Grove City Coll. v. Bell*, 465 U.S. 555 (1984) (private college). CAP is not such an institution. Like the Boy Scouts of America and the Girl Scouts of the USA, with which it shares Subtitle II, Part B of Title 36, CAP is a youth volunteer organization that may have educational components — but is not itself an "education program or activity" within Title IX's meaning.

### 3. The Department of Defense's Treatment of JROTC — and Its Silence as to CAP — Confirms That CAP Is Not a Title IX-Covered Program

The contrast between CAP and the Junior Reserve Officers' Training Corps (*"JROTC"*) is instructive. JROTC operates inside accredited secondary schools and supplies military-style instruction as part of those schools' curricula. The Department of Defense has issued explicit Title IX implementing regulations governing nondiscrimination on the basis sex in education programs and activities under its administration. *See* 32 C.F.R. Part 196.

There is no analogous regulatory framework for CAP. No Air Force or DoD regulation purports to apply Title IX to CAP cadet programs. That regulatory silence is consistent with the underlying statutory framework: CAP is a federally chartered private nonprofit organization (36 U.S.C. § 40301) that "is not an instrumentality of the Federal Government for any purpose" outside Air Force Assigned Missions. 10 U.S.C. § 9491(2). "CAP members are private citizens who volunteer their time, services, and resources to accomplish CAP objectives and purposes." 32 C.F.R 842.119. The agencies entrusted with administering Title IX in the federal-defense context have *not* treated CAP as a Title IX recipient, and Plaintiffs cannot manufacture coverage where Congress and the executive have not provided it.

### 4. SAC Pleads No Facts Showing That Federal Funding to CAP Is Extended to an Educational Program

Even assuming *arguendo* that CAP could in some circumstances be an "education program or activity," Plaintiffs must allege facts plausibly showing that the federal funding to CAP is one of the three forms identified in § 1687(3): (a) funding to CAP "as a whole"; (b) funding to a CAP entity "principally engaged in the business of providing education"; or (c) funding to a "geographically separate facility" that operates an educational program. The SAC alleges none of the three.

The relevant SAC paragraphs (¶¶ 171–175, identical to FAC ¶¶ 165–169) allege only that CAP "operated as a federally funded organization receiving financial assistance through United States Air Force appropriations and other federal agencies" (SAC ¶ 171); that CAP "operates educational programs ... that constitute federally funded educational activities subject to Title IX requirements" (SAC ¶ 172); and a list of cadet activities (SAC ¶¶ 173–174). Notably absent is any allegation that the federal funding is earmarked for

9

those activities, that CAP is principally engaged in providing education, or that the encampment at Camp Blanding was a Title IX-qualifying federally funded facility. These are precisely the kind of bare legal conclusions that *Iqbal* and *Twombly* hold have no presumption of truth. *Iqbal*, 556 U.S. at 678–79.

Plaintiffs have added *no* new factual allegations on this point — even after dropping the § 1983 counts and making Title IX the case's only federal anchor — which is telling. Plaintiffs have had the opportunity to plead around this threshold problem and chose not to do so. Where "the plaintiff has had ample opportunity to state a claim but has failed to do so," leave to amend may be properly denied. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) *citing Hall*, 367 F.3d at 1263 .

### 5. Federal Assistance to CAP Is Earmarked for Mission-Specific Purposes and Is Not Extended to CAP "As a Whole" Under § 1687(3)

Beyond the pleading deficiencies identified above, the statutory and appropriations framework governing federal assistance to CAP affirmatively establishes that no alternative under § 1687(3) is satisfied. Each of the three statutory pathways fails as a matter of law.

***First, § 1687(3)(A)(i), funding "as a whole" is not satisfied.*** Chapter 959 of Title 10 contains a dedicated section — 10 U.S.C. § 9495, titled "Funds appropriated for the Civil Air Patrol" — that governs the appropriation of federal funds to CAP. In annual practice, Congress allocates those funds among three separate, earmarked Air Force appropriation accounts, each with statutorily specified purposes and uses. The FY 2010 Department of Defense Appropriations Act is illustrative: it provided "not less than $33,756,000" for CAP, of which (i) $26,433,000 was drawn from "Operation and Maintenance, Air Force" to support "operation and maintenance, readiness, counterdrug

10

activities, and drug demand reduction activities involving youth programs"; (ii) a specified portion was drawn from "Aircraft Procurement, Air Force"; and (iii) a specified portion was drawn from "Other Procurement, Air Force" for vehicle procurement. *See* Dept. of Defense Appropriations Act, 2010, Pub. L. No. 111-118, § 8025, 123 Stat. 3409 (2009). Successive DoD appropriations acts have maintained that same three-bucket, line-item structure through FY 2024. *See, e.g.*, Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, div. C (Dept. of Defense Appropriations Act, 2017); Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, div. C (Dept. of Defense Appropriations Act, 2022); Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. A (Dept. of Defense Appropriations Act, 2024). This is not the kind of general institutional support that § 1687(3)(A)(i) contemplates. It is mission-specific, line-item, earmarked funding drawn from three distinct appropriation accounts for three distinct purposes — the antithesis of aid extended to a private organization "as a whole." *Cf. Grove City Coll. v. Bell*, 465 U.S. 555, 570–73 (1984) (distinguishing, under the pre-CRRA framework, institution-wide aid from program-specific funding — a distinction still found in § 1687(3)'s tripartite structure).

*Second, § 1687(3)(A)(ii), entity "principally engaged in the business of providing education," is not satisfied.* CAP's congressionally established purposes, as codified at 36 U.S.C. § 40302, are to "encourage and aid United States citizens in contributing their efforts, services, and resources in developing aviation and in maintaining air supremacy," to "encourage and develop by example the voluntary contribution of private citizens to the public welfare," to "provide aviation education and training," and to "assist the Department of the Air Force in fulfilling its noncombat mission." Aviation education is one of several statutory purposes — not the organization's

11

"principal" business. CAP is a multi-purpose federally chartered volunteer organization whose activities include emergency services, search-and-rescue, disaster relief, homeland security support, communications support, and voluntary citizen service. It is not "principally engaged in the business of providing education" within the meaning of § 1687(3)(A)(ii), and the SAC does not plausibly allege otherwise.

**Third, § 1687(3) (B), federal assistance to a "geographically separate facility," is not satisfied.** Section 1687(3)(B) extends Title IX coverage to "the entire plant or other comparable, geographically separate facility" to which federal financial assistance is extended, where the facility is principally used for one of the § 1687(3)(A)(ii) categories. The SAC identifies no such facility. The July 2022 encampment occurred at Camp Blanding, a Florida National Guard training facility — not a CAP plant or geographically separate educational facility — and the SAC pleads no facts establishing that federal financial assistance is "extended" to any CAP facility principally engaged in education. The allegation in SAC ¶ 173 that squadron meetings include "1.5 hours of leadership training, 1.5 hours of aerospace training, 45 minutes of character development, and 45 minutes of physical training" describes the content of volunteer-led evening meetings conducted at various local sites, *not* an earmarked federally funded educational facility.

Because none of the three statutory pathways under § 1687(3) is satisfied, and because the SAC pleads no facts that could plausibly satisfy any of them, the Title IX counts fail on this independent ground in addition to the program-or-activity defect discussed above.

### 6. CAP's Statutory Non-Instrumentality Status Reinforces That CAP Is Not a Title IX-Covered Program

As CAP set out at length in its pending MTD, Congress has expressly declared that CAP "is not an instrumentality of the Federal Government for any purpose" except when conducting Air Force Assigned Missions ("AFAMs"). 10 U.S.C. § 9491(2). The cadet encampment at Camp Blanding was not an AFAM. (Doc 12 ¶ 48; SAC ¶ 55.) That statutory framework underscores that CAP is not a federally administered education program. Plaintiffs cannot have it both ways: CAP cannot be a private nonprofit immune from constitutional tort liability under § 1983 (as Plaintiffs now concede by dropping FAC Counts I–III) and simultaneously a federally administered education program subject to Title IX.

For all of these reasons, the proposed Title IX counts would not survive a Rule 12(b)(6) motion. Leave to amend should be denied as futile.

**B.  The SAC Does Not Cure the Defects Identified in CAP's Pending Motion to Dismiss**

The proposed SAC retains, in renumbered form, three counts that CAP's pending MTD demonstrated were defective: vicarious liability (now SAC Count V), breach of contract (now SAC Counts VI and VII), and intentional infliction of emotional distress (now SAC Count VIII). The proposed amendments do not cure those defects. Leave to amend should be denied as futile as to those counts as well.

*1. Vicarious Liability (SAC Count V) Still Fails*

CAP's pending MTD explained at length why the vicarious-liability count cannot be sustained: Welch was an unpaid volunteer cadet, not an employee (CAPR 39-2 § 1.1.1); intentional sexual battery is, as a matter of Florida law, outside any conceivable scope of agency, *Iglesia Cristiana La Casa Del Señor, Inc. v. L.M.*, 783 So. 2d 353, 357–58 (Fla. 3d

13

DCA 2001); and the FAC's "ratification" theory is foreclosed by *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015). The SAC adds no new factual allegations regarding vicarious liability, and the analysis is unchanged. CAP incorporates by reference Section IV.B of its pending MTD as if fully set forth herein.

### 2.  Breach of Contract (SAC Counts VI and VII) Still Fails — and the Cross-References Are Now Broken

Plaintiffs' apparent attempt to cure the breach-of-contract defects identified in CAP's MTD is the addition of a new factual section labeled "CAP's Contractual Relationship with Members." (SAC ¶¶ 48–54.) These additions do not cure the defects in the breach-of-contract counts, for two separate reasons.

First, the new allegations are conclusory legal labels of the type the Supreme Court has held insufficient under *Iqbal* and *Twombly*. SAC ¶ 54  -- "the CAP Regulations are contractually binding on both CAP and the cadets/members" -- is precisely the kind of bare legal conclusion "couched as a factual allegation" that a court need not credit. *Iqbal*, 556 U.S. at 678–79; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The substantive analysis remains exactly as set forth in CAP's pending MTD: internal organizational regulations are governance documents, not contracts that confer privately enforceable rights on individual members. *See Cottrell v. United States*, 42 Fed. Cl. 144, 150 (1998); *Lewis v. United States*, 70 F.3d 597, 600 (Fed. Cir. 1995). CAP incorporates by reference Section IV.C of its pending MTD.

Indeed, the new "Contractual Relationship" allegations actively undermine Plaintiffs' theory. They confirm that the CAP Regulations are unilaterally adopted governance documents that bind "all members" (SAC ¶ 51), enforced through CAP's own internal disciplinary procedures. That description is the antithesis of a bargained-for

14

contract with mutuality of intent and unambiguous offer and acceptance. *Lewis*, 70 F.3d at 600.

Second, the breach-of-contract counts as drafted in the SAC are independently defective because their internal cross-references are broken. The SAC's addition of the seven-paragraph "Contractual Relationship" section, together with the conversion of two formerly multi-part paragraphs (FAC ¶¶ 80 and 92) into independent numbered paragraphs, has shifted the numbering of every paragraph after FAC ¶ 47 by thirteen positions. But Plaintiffs did not update the cross-references in the breach-of-contract counts:

- **SAC Count VI** (Hollon's breach-of-contract count) identifies the duties CAP allegedly owed to Hollon by reference to "paragraphs 72, 76-88, 101, and 107" and identifies the alleged breaches by reference to "paragraphs 73-75, 89-100, 102-106, and 108-109." Those are FAC paragraph numbers. In the SAC, ¶ 72 is now in the Evidence Destruction section ("CAP leadership failed to separate Welch from other cadets"); ¶ 76 is now in the Immediate Aftermath section ("On July 17, 2022, Cadet Hollon and Crawford reported the battery ... to law enforcement"); and ¶¶ 88–90 are isolated sub-definition paragraphs from CAPR 60-2 § 1.5. None of those paragraphs identifies the regulatory duties Plaintiffs say CAP breached.

- **SAC Count VII** (Crawford's breach-of-contract count) suffers the same defect. It identifies the duties CAP allegedly owed to Crawford by reference to "paragraphs 114, 116, 119, 138, 141, and 143" and the alleged breaches by

15

reference to "paragraphs 115, 117-118, 120-122, 139, 142, and 144." Those paragraphs do not, in the SAC, identify any regulatory duty.

A complaint must give the defendant "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). Where, as here, a count purports to identify the defendant's contractual duties and the alleged breaches by paragraph cross-reference, but the cross-references in fact point to entirely different content, the count fails to provide fair notice. The SAC's breach-of-contract counts are independently subject to dismissal on that basis.

### 3. Intentional Infliction of Emotional Distress (SAC Count VIII) Still Fails

CAP's pending MTD established that the FAC's IIED count fails because the conduct alleged — institutional discipline, internal investigations, and allegedly unfair speech about a member — does not meet the "particularly high" Florida standard for "extreme and outrageous" conduct. *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985); *Pierre v. City of Miramar, Fla., Inc.*, 537 F. App'x 821, 827 (11th Cir. 2013); *Lay v. Roux Labs., Inc.*, 379 So. 2d 451 (Fla. 1st DCA 1980). The SAC pleads no new facts in support of IIED. CAP incorporates by reference Section IV.D of its pending MTD.

### C.  If the Federal Counts Are Dismissed, the Court Should Decline Supplemental Jurisdiction Over the Remaining State-Law Claims

When all federal claims have been dismissed prior to trial, "the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), superseded on other grounds by statute as stated in *Sanford  v. MemberWorks, Inc.*, 625 F.3d 550, 561 ( 9th Cir. 2010); *see*

16

*also* 28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when ... the federal claims have been dismissed prior to trial.").

If the Court accepts CAP's argument that the proposed Title IX counts cannot survive Rule 12(b)(6), no federal claim against CAP remains in the case. The surviving claims would be Hollon's state-law negligence and negligence per se counts, Crawford's state-law breach-of-contract count, and the four counts against Welch (battery, false imprisonment, battery, and IIED). None implicates federal law. Under *Cohill* and *Raney*, the appropriate course is for the Court to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), and dismiss the remaining counts without prejudice, so that Plaintiffs may pursue them, if at all, in state court.

### D.  Plaintiff Crawford Has No Federal Claim and No Independent Basis to Remain in This Court

Crawford's only federal claim -- Count III of the FAC, brought under 42 U.S.C. § 1983 -- has been abandoned. After the proposed amendment, Crawford's sole claim against CAP is state-law breach of contract (SAC Count VII). She is not a Title IX plaintiff, and the SAC does not purport to bring her within Title IX's protections. She accordingly has no claim against CAP that would independently support federal-court jurisdiction.

For the contract reasons set forth in Section IV.B.2 above and in CAP's pending MTD, Crawford's breach-of-contract count is also futile and should be dismissed on that basis. But even if it survived as a state-law claim, the Court should decline supplemental jurisdiction over it under 28 U.S.C. § 1367(c)(3). *Raney*, 370 F.3d at 1089. Crawford's claim arises from her treatment as a senior member and CAP officer following her

17

daughter's report -- a factually distinct controversy from any cadet-related Title IX theory -- and the discretionary factors under § 1367(c) all weigh against retaining it in federal court.

### E. Additional Indicia of an Improperly Hasty Amendment

Although the futility analysis above is sufficient to deny leave to amend, the Court may also consider the proposed amendment's evident drafting defects as further support for denial. The SAC's introductory paragraph still pleads that this is an action "for violations of the Fourteenth Amendment while acting under color of federal law pursuant to violations of Title IX, ... [and] negligent infliction of emotional distress" - language that is internally inconsistent (Title IX is not a Fourteenth Amendment claim and is not premised on color of federal law, and there is no NIED count anywhere in the SAC). (SAC ¶ 2.) The SAC's jurisdictional allegation invokes only "20 U.S.C. § 1681(a)" (SAC ¶ 9), even though § 1681(a) is the substantive Title IX prohibition; the FAC had invoked 28 U.S.C. § 1331 as the jurisdictional grant, but the SAC omits § 1331 entirely. CAP recognizes that this imprecision alone would not defeat jurisdiction -- a Title IX claim plainly arises under federal law and is within § 1331, and defects in jurisdictional pleading may be cured under 28 U.S.C. § 1653. But the omission, like the leftover Fourteenth Amendment and NIED references in SAC ¶ 2, reflects the rushed nature of the redraft. Moreover, as detailed in Section IV.B.2 above, the breach-of-contract counts incorporate cross-references that point to the wrong paragraphs.

These defects reflect that the SAC was prepared in apparent haste possibly to evade an adverse ruling on CAP's pending MTD rather than to cure pleading deficiencies in good faith.

### F. The Court's Futility Ruling Applies Equally to the Identical Title IX Counts in the First Amended Complaint

18

A final procedural point warrants emphasis. An order denying leave to amend on futility grounds is a ruling on the legal sufficiency of the proposed claim under the Rule 12(b)(6) standard. *Coventry First*, 605 F.3d at 870; *Hall*, 367 F.3d at 1262–63. If the Court concludes that the proposed Title IX counts in the SAC fail to state a claim, that conclusion necessarily also disposes of the Title IX counts in the First Amended Complaint, because those counts are pled identically in both pleadings. Other than renumbering, SAC Counts I and II are word-for-word reproductions of FAC Counts IV and V, and the underlying factual allegations supporting them are the same such that Plaintiffs did not add a single new factual allegation in support of Title IX. Thus, a holding that the Title IX theory fails as a matter of law applies to the operative pleading with equal force.

Failure-to-state-a-claim is not subject to the pre-answer consolidation rule of Federal Rule 12(g)(2). Rule 12(h)(2) expressly preserves the defense, allowing it to be raised in any pleading permitted under Rule 7(a), by motion under Rule 12(c), or at trial. CAP therefore respectfully requests that the Court, having determined that the Title IX counts are futile and fail under Rule 12(b)(6), also dismiss Counts IV and V of the First Amended Complaint on that basis — whether operating as a sua sponte Rule 12(b)(6) dismissal after full briefing, *see American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007), or as a Rule 12(h)(2) ruling incorporated into the Court's disposition of the Motion for Leave and the pending MTD. Plaintiffs have had a full opportunity to be heard on the Title IX issue through this briefing, so the procedural prerequisites for dismissal are satisfied.

The practical result is that, if the Court accepts CAP's arguments, the proper disposition is: (i) denial of leave to amend; (ii) dismissal of FAC Counts I, II, III, VIII, IX, X,

and XI per the grounds in the pending MTD; (iii) dismissal of FAC Counts IV and V as failing to state a claim for the reasons set forth in Section IV.A above; and (iv) dismissal of the remaining state-law counts for lack of supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).

## V.  CONCLUSION

For all of the foregoing reasons, Defendant Civil Air Patrol, Inc., respectfully requests that this Court enter an order:

1.  Denying Plaintiffs' Motion for Leave to File a Second Amended Complaint on the ground that the proposed amendment would be futile;

2.  Granting CAP's pending Motion to Dismiss the First Amended Complaint and dismissing Counts I, II, III, VIII, IX, X, and XI of the First Amended Complaint with prejudice on the grounds set forth therein;

3.  Dismissing Counts IV and V of the First Amended Complaint with prejudice for failure to state a claim under Rule 12(b)(6), for the reasons set forth in Section IV.A above;

4.  Declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3), over the remaining state-law claims and dismissing those claims without prejudice; and

5.  Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ J. Andrew Talbert*

**J. Andrew Talbert**
Florida Bar No.: 0106003
Quintairos, Prieto, Wood & Boyer, P.A.
114 East Gregory Street, 2nd Floor
Pensacola, FL 32502

20

Telephone: (850) 434-6490
Facsimile: (850) 434-6491
Atalbert@qpwblaw.com
*Counsel for Defendant Civil Air Patrol, Inc.*

**I, J. Andrew Talbert, certify NO GENERATIVE AI was used in drafting this filling.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 20, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ J. Andrew Talbert

**J. Andrew Talbert**
Florida Bar No.: 0106003

21