**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CYNTHIA CRAWFORD and ELIZABETH HOLLON,

Plaintiffs,

v.

CIVIL AIR PATROL, INC. and JOSHUA KARSTEN WELCH,

Defendants.

CASE NO: 3:25-cv-737-WWB-SJH

**DEMAND FOR JURY TRIAL**

# SECOND AMENDED COMPLAINT

## INTRODUCTION

1. This is a civil action for damages arising from the systematic pattern of institutional retaliation, gender-based discrimination, and deliberate indifference by the Civil Air Patrol, Inc., U.S. Air Force Auxiliary ("CAP") to the creation of child sexual abuse material ("CSAM") and battery by JOSHUA KARSTEN WELCH ("Welch") of minor child, ELIZABETH HOLLON ("Cadet Hollon" or "Hollon") while both were cadets in CAP.

2. Plaintiffs CYNTHIA CRAWFORD ("Crawford") and Cadet Hollon bring this action against CAP, for violations of Title IX, negligence, negligence per se, vicarious liability, and breach of contract.

3. Cadet Hollon further brings this action against Welch for false imprisonment, battery, and intentional infliction of emotional distress.

4. The incidents giving rise to this lawsuit occurred during two separate time frames.

5. The first time frame occurred between August 2021 through December 2021 while Welsh was living as a guest at Cadet Hollon's house wherein he physically and sexually battered minor child Hollon on numerous occasions against her will.

6. The second time frame occurred during Hollon's participation in the CAP cadet program from 2018 through 2025, culminating in a July 16, 2022 incident at a CAP encampment at Camp Blanding, Florida, where 18-year-old cadet Welch committed battery against 16-year-old Cadet Hollon and took non-consensual photograph(s) of her exposed genitals, which he then showed to other male cadets – effectively producing and sharing CSAM.

7. Rather than protecting the victim, CAP leadership suspended Cadet Hollon under false pretenses, destroyed evidence, failed to follow mandatory reporting laws, and subjected both Cadet Hollon and her mother, Crawford, to ongoing retaliation for reporting the incident to police.

8. As a direct result of Defendants' actions, omissions, and deliberate indifference, Cadet Hollon has suffered severe psychological trauma, loss of educational and career opportunities, and ongoing emotional distress, while Cynthia Crawford has been subjected to professional retaliation and removal from leadership positions within the organization.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the Title IX claims pursuant to 20 U.S.C. § 1681(a), as Defendant Civil Air Patrol operates educational programs and activities that receive federal financial assistance from the United States Air Force and other federal agencies.

10. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as such claims are so related to the federal claims that they form part of the same case or controversy.

11. Personal jurisdiction over Defendant Civil Air Patrol is proper as CAP conducts substantial and continuous business activities within the State of Florida through its Florida Wing operations, maintains regular contacts with Florida residents through its cadet and senior member programs, and the tortious conduct by CAP alleged herein occurred within the State of Florida and this District.

12. Personal jurisdiction over Defendant Welch is proper as Welch is a Florida resident and the tortious conduct by Welch alleged herein occurred within the State of Florida and this District.

13. Venue is proper in the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), as Defendant Civil Air Patrol conducts substantial business activities within this judicial district and division, Defendant Joshua Welch lives in this District, and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district and division.

## PARTIES

### A. Plaintiffs

14. Plaintiff CYNTHIA CRAWFORD is an adult resident of Clay County, Florida, is the parent of Elizabeth Hollon, and is *sui juris*.

15. Plaintiff ELIZABETH HOLLON is an adult resident of Clay County, Florida, and is *sui juris*.

16. At the time of the incidents giving rise to this lawsuit, Elizabeth Hollon was a minor child under the age of 18.

17. From May 2018 through 2025, Elizabeth Hollon was a cadet member of the CAP, participating in the organization's youth development, aerospace education, and leadership training programs.

### B. Defendant

18. Defendant CIVIL AIR PATROL, U.S. Air Force Auxiliary is a federally chartered non-profit organization.

19. Defendant CAP's principal place of business is located at 105 South Hansell Street, Maxwell Air Force Base, AL 36112.

20. CAP operates cadet squadrons throughout Florida, to include the greater Jacksonville area. Florida Wing's headquarters are located at 4040 Crossfield Way, Suite 6 in Lakeland, FL, which is in this District.

21. CAP is the official civilian auxiliary of the United States Air Force, established by federal charter and operating under the authority of federal law, receiving federal funding through Air Force appropriations and other federal agencies.

22. At all times material to this complaint, CAP received federal funding for educational programs.

23. At all times material to this action, CAP operated cadet programs for youth ages 12-21 throughout the United States, including in Florida, providing aerospace education, character development, leadership training, and emergency services training to cadets nationwide.

24. CAP's Florida Wing operates with over 1,800 cadets under its care and supervision, conducting regular meetings, encampments, leadership academies, and other educational activities throughout the State of Florida, including in the greater Jacksonville area.

25. At all times material to this action, CAP was responsible for the supervision, care, and protection of minor cadets participating in its programs, including Cadet Hollon, and had authority over the conduct and discipline of all cadets and senior members within its organization.

26. Defendant Joshua Karsten Welch is an adult resident of Duval County, Florida, and is *sui juris*.

## FACTUAL ALLEGATIONS

### A. Hollon's Participation in Civil Air Patrol

27. In May 2018, Cadet Hollon joined the Civil Air Patrol at the age of 12 in St. Johns County, Florida.

28. As a CAP cadet, Hollon participated in regular meetings consisting of leadership training, aerospace education, character development, and physical training activities, as well as encampments, leadership academies, and other educational programs operated by CAP.

29. Cadet Hollon excelled in the CAP program, advancing through the ranks and earning leadership positions including Squadron Commander and Group Cadet Advisory Council position, amongst other achievements.

30. At the age of 12, Cadet Hollon was diagnosed with dysautonomia, a heart condition affecting blood pressure regulation and salt absorption, which is exacerbated by heat, dehydration, and physical activity, for which she had a doctor's note limiting certain physical activities.

### B. Joshua Welch's Pattern of Sexual Coercion and Physical Abuse

31. Welch was also a member of the Civil Air Patrol cadet program and participated in the same squadron as Cadet Hollon.

32. During the COVID period from approximately 2020 to 2021, Welch lived as a guest in the Crawford home for approximately 8 to 9 months due to Welch's family circumstances.

33. In February 2021, when Cadet Hollon was 14 years old and Welch was 16 years old, Welch began pursuing a romantic relationship with Hollon.

34. Shortly after he began pursuing her, Welch engaged in a pattern of sexual coercion against Hollon, using repeated suicide threats to force, coerce, and manipulate her to engage in sexual activity against her will.

35. In August 2021, Welch escalated his abusive behavior and began physically isolating, assaulting, and battering Hollon.

36. During this time Welch struck Cadet Hollon in the face and body on multiple occasions. Cadet Hollon did not consent to be touched or struck in this way.

37. Throughout this period, Welch continued to manipulate Cadet Hollon through threats of self-harm and suicide whenever she attempted to resist his advances or attempted to end the relationship.

38. The physical violence Welch used against Cadet Hollon continued through the end of 2021.

**C. The December 2021 Rape**

39. In December 2021, when Hollon was 15 years old, Welch entered Hollon's room without permission while she was sleeping.

40. Welch covered Hollon's mouth and held her hands down to prevent her from resisting.

41. Despite Hollon saying "no" and attempting to push him off, Welch penetrated her vagina with his penis against her will.

42. Welch threatened Hollon that no one would believe her if she reported what he had done.

**D. Hollon's Disclosure and Breakup**

43. In January 2022, Hollon broke up with Welch and disclosed the physical abuse to her mother, Cynthia Crawford, but did not initially reveal the sexual battery due to fear and trauma.

44. Following the breakup, Welch began stalking Hollon and continued making suicide threats in an attempt to manipulate her into resuming the relationship.

45. After a few months of trying, Welch finally stopped and appeared to accept that the relationship was over.

46. As a direct and proximate result of the sexual battery Welch committed against Hollon, she experienced pain and suffering, emotional distress, shame and humiliation, harassment, and a lack of enjoyment of life.

**E. CAP's Contractual Relationship with Members**

47. An aspiring cadet or member must apply to join CAP and must go through the application process.

a. The CAP Cadet Membership Application asks the parents of child cadets to agree – on behalf of their child – to abide by CAP policies and regulations and requires an agreement to pay a membership fee.

b. The CAP Adult Membership Application requires an agreement to adhere to the CAP policies and regulations and requires an agreement to pay a membership fee.

48. When CAP identifies a potential member (including a potential cadet) that they wish to have join CAP, they make an offer of membership. CAP membership is governed by Civil Air Patrol Regulations ("CAPR"), which are the formal rules governing CAP operations, membership, programs, discipline, safety, and compliance with state and federal laws.

49. If they accept the offer of membership and its terms, the aspiring member (including cadets) then accepts membership.

50. By accepting membership, CAP's Regulations are binding on all members, including CAP leadership.

51. CAP cadets/members must pay membership dues, must participate in CAP programs and attend meetings, and must adhere to and abide by the Oath of Membership and CAP regulations. The Oath of Membership is renewed annually and affirms that:

a. Membership is a privilege, not a right, and may be granted or removed;

b. The member/cadet agree to subscribe to CAP's objectives, purposes, Core Values, Ethics Policies, Constitution, Bylaws, Regulations, and applicable federal, state, and local laws; and

c. Each member/cadet commits to following safe practices.

52. CAP provides events, groups, and cadet programs, a community to participants, leadership and educational opportunities to cadets to enhance their college and career applications, and the ability to enlist as an E3 air force advanced enlistment rank.

53. The CAP Regulations are contractually binding on both CAP and the cadets/members.

**F. The July 16, 2022 Camp Blanding Incident ("the July 16, 2022 Incident")**

54. On or about July 16, 2022, Cadet Hollon was participating in a CAP encampment at Camp Blanding in Clay County, Florida.

55. At the beginning of encampment, while conducting a cadet protection training class, a CAP veteran senior member acting under color of CAP authority, who was also a Broward County Sheriff's Officer in uniform, addressed the cadet staff and told them that if they wished to fraternize, "just don't get caught." Fraternizing is a violation of CAP regulations. This statement by leadership effectively gave the green light to cadets to violate the fraternization regulation and promoted a culture permissive sexual activity without genuine consequence.

56. During the encampment, CAP leadership gave Cadet R.P. the keys to the unoccupied barracks and notified him the barracks would be vacated and empty.

57. Cadet Hollon (then 16 years old), and fellow male cadet R.P. (also 16 years old) engaged in consensual intimate contact in an unoccupied barracks.

58. Cadet R.P. and Cadet Hollon encountered Welch on their way to the barracks and told him where they were going.

59. Welch was acting under color of authority for CAP as the night watch cadre, whose duty, as a standards and evaluation officer, was to ensure the safety and security of the cadets.

60. Instead of telling them to return to bed, Welch encouraged the minors to continue on their way and then followed them.

61. Welch forced entry into the barracks where Cadet Hollon and Cadet R.P. were located.

62. Upon entering, Welch pushed Cadet R.P. aside and forcibly grabbed Cadet Hollon.

63. Welch then forcibly exposed Hollon's genitals against her will.

64. While Cadet Hollon was in this exposed state, Welch took photograph(s) of this minor child's naked lower body and genitalia without her consent.

65. Welch then showed the non-consensual photograph(s) to one or more male cadets at the encampment.

66. The taking and distribution of this photograph(s) constituted the creation and distribution of child pornography, as Cadet Hollon was a minor at the time.

67. Sometime thereafter, CAP leadership responded to the scene.

**G. Evidence Destruction and Institutional Cover-Up**

68. Wing Commander Col. Luis Negron, who was present at the encampment, took immediate steps to destroy evidence.

69. Col. Luis Negron deleted the non-consensual photograph(s) from Welch's phone.

70. Despite having been told that Welch had committed battery and sexual exploitation of a minor at a minimum, CAP allowed Welch to remain at the encampment with continued unsupervised access to other minor cadets.

71. CAP leadership failed to separate Welch from other cadets or take any protective measures to prevent further incidents.

**H. CAP's Violations of Florida's Statutory Mandatory Reporting Laws**

72. Further, CAP personnel were mandatory reporters under Fla. Stat. § 39.201 but failed to fulfill their legal obligations under the leadership and upon information and belief, at the direction of Wing Commander Luis Negron.

73. Despite having immediate knowledge on July 16, 2022, that Joshua Welch had committed physical battery against Cadet Hollon and created child sexual abuse material by photographing her exposed genitals without consent, CAP personnel including the Wing Commander, Col Luis E. Negron, the Director of Cadet Programs, and the Encampment Commandant failed to report this incident to the Department of Children and Families until July 23, 2022, a delay of five days and only after it was known that Cadet Hollon would be reporting to law enforcement.

74. CAP's failure to immediately report this incident violated their mandatory reporting obligations and prevented timely protective services intervention for Cadet Hollon.

**I. Immediate Aftermath and Reporting by Plaintiffs**

75. On July 17, 2022, Cadet Hollon and Crawford reported the battery and non-consensual photography to law enforcement.

76. Rather than supporting the victim, CAP leadership immediately began taking retaliatory action against Cadet Hollon for reporting the incident to law enforcement.

77. Nonetheless, Welch was prosecuted by the State Attorney's Office for battery.

**J. CAP's Improper Suspension of the Victim**

78. On July 19, 2022, just two days after the incident was reported to police, CAP suspended Cadet Hollon under Civil Air Patrol Regulation (CAPR) 35-1, which is designated for "Suspected Cadet Abuse."

79. The suspension was improper as CAPR 35-1 is intended to be applied to suspected abusers, not victims of abuse.

80. On July 20, 2022, a formal suspension letter was issued to Cadet Hollon.

81. Without any authority to do so, CAP's suspension stripped Cadet Hollon of all her leadership positions, including Squadron Commander and Group CAC positions, and barred her from participating in any CAP activities.

**K. CAP's Violations of CAP Regulations Related to Hollon**

82. CAPR 60-2 (2019), Section 1.2.5 states that all adult leaders have a duty to act *in loco parentis* with cadets.

83. CAPR 60-2 (2019), Sections 1.4.2 highlights that CAP values are that CAP has no tolerance or physical, sexual, or emotional abuse in any CAP program. Further, CAP will report to law enforcement all reasonable suspicions of abuse or criminal conduct as required by local law, and it will cooperate with law enforcement investigations.

84. CAPR 60-2 (2019), Sections 1.4.3 states that CAP members must follow state mandatory reporting laws, and if they conflict with a CAP regulation, the law will supersede.

85. CAPR 60-2 (2019), Section 1.4 expands the scope of these regulations to govern all CAP activities and all CAP members.

86. CAPR 60-2 (2019), Section 1.5 includes the following definitions:

a. Section 1.5.2: expands child sexual abuse to include "non-contact sexual acts such as exposure, voyeurism, or indecent video recording or broadcasting".

b. Section 1.5.4: Hazing means "… any conduct whereby someone causes another person to suffer or to be exposed to any activity that is cruel, abusive, humiliating, oppressive, demeaning, or harmful".

c. Section 1.5.5: Bullying means "a form of misconduct sometimes exhibited by adolescents that falls short of abuse by not causing serious harm under the definition above".

87. CAPR 60-2 (2019), Section 2.5 establishes that CAP has no tolerance for bullying and CAP members will both deter it and discipline cadets engaged in it. Where bullying escalates to abuse, it shall be reported as required by law and addressed as required by CAP regulations (chapter 4).

88. CAPR 60-2 (2019), Section 2.6.4 requires adequate supervision of every cadet activity by at least two adults to prevent misconduct during CAP activities.

89. CAPR 60-2 (2019), Section 4.2 required adult members who developed a good faith suspicion or belief of cadet abuse (sexually, physically, neglect, or emotionally) to report immediately to CAP through the chain of command.

90. CAPR 60-2 (2019), Section 4.2.3 determines that any adult that fails to report reasonable suspicions of abuse will be subject to CAP disciplinary action.

91. CAPR 60-2 (2019), Section 4.2.5 states that within 48 hours of the initial report alleging sexual or physical abuse being made, CAP's General Counsel will forward the complaint to CAP-USAF/CC (referring to the Commander of CAP).

92. CAPR 60-2 (2019), Section 4.6 states that abusive behavior is always grounds for possible membership termination, and in some instances, termination is mandatory.

93. CAPR 35-1 (2015), Section 2-2(a)(3) states "Commanders will immediately suspend any member for alleged or suspected cadet abuse, when credible unfavorable information is received which, if substantiated, would make the member subject to

termination, or while an internal investigation of such allegations is pending. The suspension is effective for up to 60 days."

94. Under CAP Regulatory definitions in Section 1.5, the July 16, 2022 Incident constitutes physical abuse, the expanded definition of sexual abuse which includes exposure, voyeurism, and incident video recording/broadcasting, hazing, and bullying.

95. In violation of CAPR 60-2 (2019), CAP personnel, including Col. Luis E. Negron and CAP leadership failed to report a physical battery, child sexual abuse, and the creation of child sexual abuse material by Welch to the Department of Children and Families until July 23, 2022, a delay of five days and only after it was known that Cadet Hollon would be reporting to law enforcement.

96. Upon information and belief, during this delay, CAP leadership consulted with a Broward County Sheriff's Deputy who was also a CAP member, who had no authority to provide legal counsel to CAP, rather than following proper legal channels through CAP's own legal department.[1]

97. CAP's failure to immediately report this incident violated their mandatory reporting obligations and prevented timely protective services intervention for Cadet Hollon.

98. In violation of CAPR 60-2 (2019), after learning of the July 16, 2022 Incident, Col. Luis E. Negron and/or other CAP leadership improperly:

a. Allowed Welch to remain at the encampment with continued access to minor cadets;

b. Destroyed evidence by directing that the non-consensual photograph(s) that constituted sexual abuse under CAPR be deleted from Welch's phone;

[1] This is the same Broward County Sheriff's deputy who previously advised the minor cadets to "just not get caught" in paragraph 49.

c. Failed to implement measures to protect Cadet Hollon and other cadets from further harm.

99. This improper response demonstrated deliberate indifference to Cadet Hollon’s safety and compromised any potential investigation into the July 16, 2022 Incident.

100. In violation of CAPR 60-2 (2019), Col Luis E. Negron, as Wing Commander, failed to ensure proper notification procedures were followed when the July 16, 2022 Incident was reported, violating established timeline requirements for cadet protection reporting for physical battery.

101. In violation of CAPR 60-2 (2019), CAP leadership at the July 16, 2022 encampment, failed to maintain proper oversight and supervision, allowing insufficient supervision that directly enabled Welch's physical battery, sexual abuse, hazing, and/or bullying of Cadet Hollon.

102. In violation of CAPR 35-1, Section 2-2(a)(3), Col. Luis E. Negron improperly authorized the suspension of Cadet Hollon when she was the victim, not the perpetrator, of the alleged abuse that occurred on July 16, 2022.

103. On July 20, 2022, Lt Col Judith L. Hewett issued a formal suspension letter to Cadet Hollon under CAPR 35-1, Section 2-2(a)(3), stripping her of all leadership positions and barring her from participating in any CAP activities.

104. In furtherance of violation of CAPR 35-1, Section 2-2(a)(3), CAP leadership extended Cadet Hollon’s suspension beyond 60 days without just cause.

105. This misapplication of suspension authority violated CAP's own regulations and constituted punishment of a victim for speaking out rather than protection of a victim who had just been abused.

106. In violation of CAPR 60-2 (2019), Section 4.6, Welch was not terminated after having engaged in abusive conduct on July 16, 2022, and instead, Welch was allowed to continue engaging with other cadets and was invited to attend CAP events.

**L. Institutional Pattern of Gender-Based Discrimination**

107. CAPR 36-1, Section 2 (2016) states that CAP will not discriminate based on gender.

108. CAP's response to the July 16, 2022 incident demonstrated a clear pattern of gender-based discrimination in the treatment of male perpetrators versus female victims.

109. After the July 16, 2022 Incident, female Cadet Hollon was suspended and stripped of all positions, denied further opportunities to participate in CAP functions, and denied scholarship(s).

110. Welch, a male, faced no immediate consequences beyond his initial suspension and was allowed to continue participating in CAP activities. Welch was subsequently allowed to teach leadership classes to other cadets and received an E3 Air Force advanced enlistment rank based on CAP participation and advanced cadet grade.

111. Cadet R.P., a male, who was also involved in the July 16, 2022 incident and engaged in the same acts as Cadet Hollon endured the initial suspension, but was still allowed to attend leadership school, academies, and other events while female Cadet Hollon remained suspended.

112. CAP promoted a male cadet that had been accused of cheating to Hollon's former Squadron Commander position while continuing to deny Cadet Hollon any leadership opportunities.

113. CAPR 36-2 (2012) governs how discrimination matters should be reported within CAP.

114. Plaintiff submitted a complaint to CAP that complied with any actual or perceived conditions precedent imposed upon Plaintiffs by CAPR 36-2 for their discrimination complaint(s).

115. CAP's leadership, to include Col. Luis Negron, Wing Commander, failed to follow the requirements of CAPR 36-2 (2012), and upon information and belief, did not forward Captain Crawford's complaint(s) alleging discrimination and retaliation to both her and her daughter, Cadet Hollon, as required to the CAP Equal Opportunity Officer. Further, CAP did not conduct the required investigation into these claims.

**M. Ongoing Retaliation Against Hollon**

116. CAP's retaliation against Cadet Hollon continued for over two (2) years following the July 16, 2022 Incident.

117. Cadet Hollon was supposed to be reinstated on August 10, 2022, but upon information and belief, Lt. Col. Judith L. Hewett knowingly and maliciously failed to notify Cadet Hollon of the reinstatement for an additional two weeks without any just cause for the delay.

118. CAP subjected Cadet Hollon to ongoing IG proceedings based on false allegations, creating a hostile environment designed to force her withdrawal from the organization.

119. For the past two (2) or more years, Cadet Hollon has been notified that she cannot hold any leadership role or position until the pending IG is concluded yet has never been notified what the basis of the IG complaint is, she has never been interviewed, and she has not been provided information about when the matter should resolve.

120. CAPR 20-2 (2020), Section 11.11.5 requires that the entire Complaint Resolution process must not exceed 180 days absent a justifiable reason. CAPR 123-1 (2021) also limits the length of proceedings to less than 180 days absent a justifiable reason.

121. In violation of CAPR 20-2 (2020), Section 11.11.5, the investigation has been open for far more than 180 days and upon information and belief, no valid justification has been presented to explain or permit such a delay.

122. CAPR 20-2 (2020), Section 11.7.1 requires that once an IG investigation is determined to be warranted, the subject of the IG must be notified.

123. In violation of CAPR 20-2 (2020), Section 11.7.1, Cadet Hollon has been notified that an IG investigation is ongoing, but she has been denied any notice of what it is about or what the allegations contain.

124. CAP denied Cadet Hollon scholarship opportunities and made false statements about her character to prevent her from receiving educational benefits.

125. CAPR 20-2 (2020), Section 11.8.3 requires that information regarding ongoing Inspector General ("IG") complaints and their accompanying investigations are confidential and cannot be disseminated or shared.

126. In violation of CAPR 20-2, Col. Luis E. Negron violated confidentiality requirements when he improperly disclosed information about ongoing IG investigations as a basis to deny Cadet Hollon scholarship opportunities, stating in correspondence that "the current IG investigation into allegations of testing irregularities which involve her" justified his denial of her scholarship application.

127. When Cadet Hollon transferred to other CAP squadrons, she continued to face harassment and discrimination.

128. Upon information and belief, CAP leadership and/or personnel, acting under CAP's color of authority, spread rumors about Cadet Hollon throughout the CAP community, damaging her reputation and standing within the organization and interfering with her ability to be a welcome part of a squadron or the CAP community.

**N. Retaliation Against Crawford & Damages**

129. CAP also engaged in systematic retaliation against Crawford for reporting her daughter's sexual assault to law enforcement and advocating for proper handling of the incident within CAP.

130. On September 8, 2022, Col. Luis Negron, Wing Commander and representing CAP at the highest level in Florida, issued Crawford a letter of reprimand and imposed a 30-day suspension from her duties without just cause.

131. This retaliatory suspension occurred shortly after Col. Negron has instructed Crawford and Hollon not to report because it would "ruin [his] legacy."

132. This formal disciplinary action became part of Crawford's permanent CAP record and damaged her professional standing within the organization.

133. Disciplinary allegations and the attacks on Crawford's integrity occurred without due process, in violation of CAP regulations, and constituted a "point and attack witch hunt."

134. CAP removed Crawford from her position as Assistant Wing Legal Officer, a role in which she had served the organization and provided legal guidance for years. This position was valuable to Crawford.

135. CAP also removed Crawford from her position as Deputy Commander for Cadets, stripping her of authority over cadet supervision and programs which she had also served in for years without good cause.

136. CAP barred Crawford from command assignments and cadet supervision for six months as additional punishment for reporting the assault and battery. Essentially, Crawford was punished for defying Negron's unlawful command to not report child abuse and endangerment to the police.

137. CAP subjected Crawford to baseless Inspector General investigation proceedings based on false allegations designed to discredit her and justify the retaliatory

actions. These investigations failed to provide due process or follow CAP regulatory protocols.

138. CAP's malfeasance, misfeasance, and nonfeasance damaged Crawford's legal reputation as both an exemplary attorney of the Florida Bar with a spotless record of good conduct, as well as a (former) Wing Legal Officer.

139. CAP's malfeasance, misfeasance, and nonfeasance caused Crawford and Cadet Hollon to be socially isolated within the CAP community as other CAP members distanced themselves from them following the retaliation and wrongful attack on Crawford's and Hollon's character.

140. CAP's malfeasance, misfeasance, and nonfeasance have destroyed and irreparably harmed Crawford's reputation within the CAP community, as Crawford has been deeply involved with CAP for years. CAP's unwarranted, unlawful, and malicious conduct destroyed years of volunteer service and community involvement, as she was forced to transfer squadrons and ultimately faced continued hostility wherever she went within the organization.

**O. CAP's Violations of CAP Regulations Related to Crawford**

141. At all times relevant to this complaint, a Commander's Inquiry can be initiated by a Commander and will be assigned to an IG investigative officer to investigate and generate a report of their findings to the Commander.

142. A Commander's Inquiry operates within the IG complaint framework.

143. Commander Negron initiated a Commander's Inquiry against Captain Crawford, which was assigned to an IG investigator for an investigation.

144. CAPR 20-2 (2020), Section 11.5.1, states that an IG complaint must be "submitted within 60 days of the occurrence or action upon which the complaint is based or within 60 days of the complainant becoming aware of the occurrence or action upon which the complaint is based." CAPR 123-1 (2021) has the same 60 day criteria.

145. In violation of CAPR 20-2, Section 11.5.1, and CAPR 123-1, upon information and belief, under Col. Negron's leadership, a command inquiry was filed against Captain Crawford and alleged events that took place well over 60 days prior. In a complete disregard for CAP Regulations, CAP conducted an investigation into these untimely allegations.

146. These allegations were only filed against Captain Crawford after she reported complaints about the treatment of her daughter, Cadet Hollon.

147. CAPR 20-1, Section 1, states that the IG program must be an independent, impartial, and objective process. CAPR 123-1 (2021) states the same objective.

148. In violation of CAP 20-1, Section 1, and CAP 123-1, the IG investigation into Captain Crawford was clearly retaliatory, as it was initiated by the very commander (Luis Negron) that Captain Crawford had identified as mishandling the July 16, 2022 Incident involving her daughter.

149. CAPR 20-2 (2020), Section 11.11.5 requires that the entire Complaint Resolution process must not exceed 180 days absent a justifiable reason. CAPR 123-1 (2021) also limits the length of proceedings to less than 180 days absent a justifiable reason.

150. In violation of CAPR 20-2 (2020), Section 11.11.5, and CAPR 123-1, the investigation has been open for more than 180 days and upon information and belief, no valid justification has been presented to explain or permit such a delay.

**P. Severe Psychological Trauma and Damages to Hollon**

151. As a direct result of the foregoing, Cadet Hollon has suffered severe and ongoing psychological trauma.

152. Cadet Hollon has been diagnosed with Post-Traumatic Stress Disorder and Major Depressive Disorder.

153. Cadet Hollon's psychological symptoms include severe depression, social withdrawal, intrusive thoughts, dissociation, shame, identity confusion, and suicidal ideation.

154. Cadet Hollon has engaged in self-harm and dangerous behaviors.

155. Cadet Hollon suffers from severe sleep and appetite disturbances and irregularity.

156. Following the July 2022 assault, Cadet Hollon experienced suicidal ideation and required intensive mental health intervention.

157. Hollon's career aspirations have been permanently altered, as she desired to join the Air Force, but CAP's malfeasance, misfeasance, and nonfeasance changed the trajectory of her future.

158. Cadet Hollon has suffered educational disruption, including being removed from college classes due to incidents related to the trauma she experienced.

**Q. Loss of Educational and Career Opportunities**

159. As a direct result of CAP's malfeasance, misfeasance, and nonfeasance, Cadet Hollon has been denied numerous educational and career advancement opportunities that were available to her through the CAP program.

160. Cadet Hollon was denied scholarship opportunities, with CAP making false statements about her character to prevent her from receiving educational benefits.

161. Cadet Hollon lost her opportunity to attend military academies and other prestigious institutions that recruit from CAP programs.

162. Cadet Hollon was prevented from participating in CAP leadership schools, encampments, and other educational activities that are essential for advancement within the program and valuable for college and career applications.

163. Cadet Hollon's removal from leadership positions and denial of advancement opportunities have permanently damaged her prospects for military service and related career fields.

**R. CAP's Knowledge of Institutional Problems**

164. CAP leadership had extensive prior knowledge of ongoing problems with sexual misconduct at CAP encampments and facilities involving minor cadets.

165. In or about 2020, CAP retained a consultancy firm to provide recommendations on how CAP could strengthen the Cadet Protection Program to prevent sexual abuse of minors. The consultancy firm identified areas of concern and recommended changes to CAP's policies and practices.

166. Despite being on notice of needed changes, a 2023 review by Praesidium, Inc. to determine if CAP's written policies or procedures meet best practices in abuse risk management found 23 "critical" deficiencies in its Cadet Protection regulations.

167. Despite these warnings and repeated incidents, CAP consistently failed to implement adequate safeguards or follow mandatory reporting requirements to protect minor cadets, which directly lead to the July 16, 2022 Incident occurring and the subsequent retaliation.

168. CAP has a pattern and practice of protecting organizational reputation over cadet safety.

169. Wing Commander Luis Negron oversaw the Florida Wing and had decision making authority over all CAP actions and activities during all times pertinent to this Complaint.

170. After causing immeasurable harm to Cadet Hollon and Crawford, CAP promoted Luis Negron instead enforcing any accountability or addressing his nonfeasance and misfeasance.

**S. Federal Funding and Educational Program Status**

171. At all times material to this action, CAP operated as a federally funded organization receiving financial assistance through United States Air Force appropriations and other federal agencies.

172. CAP operates educational programs including leadership training, aerospace education, and character development that constitute federally funded educational activities subject to Title IX requirements.

173. CAP's monthly cadet squadron meetings include 1.5 hours of leadership training, 1.5 hours of aerospace training, 45 minutes of character development, and 45 minutes of physical training, constituting a comprehensive educational program.

174. CAP's cadet educational activities include reading assignments, testing for rank advancement, recruitment in schools, Officer Cadet Training School, Florida Leadership Academy, and nationwide flight academy programs.

175. As a result of CAP's discriminatory actions, Cadet Hollon was denied equal access to these federally funded educational opportunities based on her sex and status as a victim of sexual assault.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF TITLE IX - SEX-BASED DISCRIMINATION IN EDUCATION
*(Hollon v. CAP)*

176. Plaintiff Elizabeth Hollon realleges and incorporates by reference the allegations contained in paragraphs 1-30, 47-128, 151-175, as if fully set forth in this Count.

177. At all times material hereto, CAP operated educational programs and activities that receive federal financial assistance through United States Air Force appropriations and other federal funding sources.

178. CAP's educational programs include leadership training, aerospace education, character development, Officer Cadet Training School, Leadership Academy programs, flight training, and other educational activities subject to Title IX requirements.

179. Cadet Hollon was a participant in CAP's federally funded educational programs from 2018 through 2025.

180. CAP subjected Cadet Hollon to discrimination on the basis of sex in its educational programs by:

a. Responding to her sexual victimization with immediate suspension and punishment while treating male perpetrators and participants with leniency;
b. Denying her equal access to educational opportunities, leadership positions, scholarships, and advancement opportunities based on her sex and victim status;
c. Applying disciplinary policies in a discriminatory manner that disproportionately punished Cadet Hollon as the female victim while protecting the male perpetrator;
d. Creating a hostile educational environment that effectively denied Cadet Hollon equal access to CAP's programs; and
e. Retaliating against her for reporting sexual harassment, assault and battery to the police.

181. CAP's discriminatory treatment was based on sex stereotypes and bias against female victims of sexual assault, as evidenced by:

a. The immediate suspension of Cadet Hollon (female victim) while allowing Joshua Welch (male perpetrator) to continue participating in programs and teaching leadership classes;

b. The promotion of male cadets that had been accused of integrity violations to positions previously held by Cadet Hollon while she remained barred from leadership roles;

c. The lenient treatment of male cadet R.P. compared to the harsh punishment imposed on female Cadet Hollon for the same alleged incident and actions; and

d. The systematic pattern of protecting male cadets and perpetrators while punishing female victims.

182. CAP had actual knowledge of the sexual harassment and assault of Cadet Hollon through direct reports from Cadet Hollon and Crawford, witness statements, and law enforcement investigation.

183. CAP responded to this knowledge with deliberate indifference by:

a. Failing to take appropriate remedial action to address the harassment;

b. Taking actions that worsened the hostile environment for Cadet Hollon;

c. Failing to prevent further harassment and retaliation;

d. Denying Cadet Hollon equal access to educational opportunities; and

e. Subjecting Cadet Hollon to additional discrimination and retaliation for reporting the assault and battery to the police.

184. CAP's deliberate indifference effectively denied Cadet Hollon equal access to its educational programs and opportunities.

185. As a direct result of CAP's Title IX violations, Cadet Hollon suffered educational harm including loss of leadership opportunities, scholarship denials, inability to participate in educational programs, damage to academic and career prospects, and other educational deprivations.

WHEREFORE, Plaintiff Elizabeth Hollon demands judgment against Defendant CAP for compensatory damages, attorney's fees and costs, and such other relief as this Court deems just and proper.

**COUNT II**
**VIOLATION OF TITLE IX - DELIBERATE INDIFFERENCE TO SEXUAL HARASSMENT**
*(Hollon v. CAP)*

186. Plaintiff Elizabeth Hollon realleges and incorporates by reference the allegations contained in paragraphs 1-30, 47-128, 151-175, as if fully set forth in this Count.

187. At all times material hereto, CAP operated federally funded educational programs subject to Title IX of the Education Amendments of 1972.

188. Joshua Welch's conduct toward Hollon, including the July 16, 2022 battery and non-consensual photograph(s) of Hollon's genitalia, constituted severe, pervasive, and objectively offensive sexual harassment that effectively denied Cadet Hollon equal access to CAP's educational programs.

189. CAP had actual knowledge of sexual harassment against Cadet Hollon through direct witness testimony from cadets present during the July 16, 2022 incident, reports from Cadet Hollon and Cynthia Crawford, law enforcement investigation and criminal charges, CAP's own investigation of the incident, and prior warnings about ongoing sexual misconduct problems at CAP encampments with cadets.

190. Despite having actual knowledge of sexual harassment, CAP responded with deliblerate indifference by:

a. Failing to take immediate effective action to end the harassment;
b. Allowing the perpetrator to remain at the encampment with unsupervised access to other minors;
c. Destroying evidence consisting of photograph(s) which constituted CSAM;

d. Suspending the victim rather than addressing the perpetrator's conduct;

e. Failing to implement measures to prevent recurrence of harassment;

f. Creating additional barriers to Hollon's participation in educational programs; and

g. Subjecting Cadet Hollon to further harassment through ongoing institutional retaliation.

191. CAP's response was clearly unreasonable in light of the known circumstances, as no reasonable person could conclude that CAP's actions were reasonably calculated to end the harassment.

192. CAP's deliberate indifference caused Cadet Hollon to suffer additional harassment, discrimination, and denial of equal educational programs and opportunities.

193. As a direct result of CAP's Title IX violations, Cadet Hollon suffered educational harm including loss of leadership opportunities, scholarship denials, inability to participate in educational programs, damage to academic and career prospects, and other educational deprivations.

WHEREFORE, Plaintiff Elizabeth Hollon demands judgment against Defendant CAP for compensatory damages, attorney's fees and costs, and such other relief as this Court deems just and proper.

**COUNT III**
**NEGLIGENCE**
*(Hollon v. CAP)*

194. Plaintiff Elizabeth Hollon realleges and incorporates by reference the allegations contained in paragraphs 1-30, 47-128, 151-175, as if fully set forth in this Count.

195. At all times material hereto, CAP owed a duty of reasonable care to Cadet Hollon as a minor participant in its programs to provide adequate supervision, maintain a safe environment, and protect her from foreseeable harm.

196. CAP's duty of care was heightened due to:

a. Hollon's status as a minor child;

b. CAP's role in *loco parentis* during encampments and activities;

c. CAP's knowledge of ongoing sexual misconduct problems at its facilities and during events sponsored and supervised by CAP;

d. CAP's custodial authority over cadets during residential programs; and

e. The vulnerable nature of the minor cadet population under CAP's care.

197. CAP breached its duty of care by:

a. Failing to provide adequate supervision during the July 16, 2022 encampment;

b. Failing to implement and enforce policies to prevent sexual misconduct;

c. Failing to properly train staff and senior cadets regarding sexual misconduct prevention;

d. Allowing Joshua Welch to have access to areas where he could assault Hollon;

e. Providing minor cadet R.P. the keys to a vacant barracks which facilitated unsupervised access and use;

f. Failing to separate known aggressors from actual and potential victims;

g. Failing to respond appropriately to reports of sexual misconduct; and

h. Failing to follow mandatory reporting requirements under Florida law.

198. CAP's breaches of duty were the proximate cause of Hollon's injuries, as the July 16, 2022 assault would not have occurred but for CAP's negligent failures in supervision and protection.

199. The harm to Cadet Hollon was a foreseeable consequence of CAP's negligent conduct, given CAP's knowledge of ongoing sexual misconduct problems and the vulnerable nature of minor cadets in residential settings.

200. As a direct and proximate result of CAP's nonfeasance, Cadet Hollon suffered damages including loss of educational and professional opportunities, Post-Traumatic Stress Disorder and/or symptoms, pain and suffering, emotional distress, severe depression, social withdrawal, intrusive thoughts, sleep disturbance, dissociation, shame and humiliation, identity confusion, and suicidal ideation, and self-harm, damage to reputation, ongoing medical treatment needs, loss of enjoyment of life, and other compensable harms.

WHEREFORE, Plaintiff Elizabeth Hollon demands judgment against Defendant CAP for compensatory damages and such other relief as this Court deems just and proper.

**COUNT IV**
**NEGLIGENCE PER SE**
*(Hollon v. CAP)*

201. Plaintiff Elizabeth Hollon realleges and incorporates by reference the allegations contained in paragraphs 1-30, 47-128, 151-175, as if fully set forth in this Count.

202. Florida Statute § 39.201 requires any person who knows, or has reasonable cause to suspect, that a child is abused, abandoned, or neglected by a parent, legal custodian, caregiver, or other person responsible for the child's welfare to report such knowledge or suspicion to the Department of Children and Families.

203. CAP personnel present at the July 16, 2022 encampment were mandatory reporters under Florida Statute § 39.201.

204. Welch’s role as a “cadre” made him de facto responsible for the welfare of any minor children he encountered on his watch – to include Cadet Hollon.

205. CAP personnel had actual knowledge that Hollon, a minor child, had been subjected to battery and further victimized by the creation of CSAM by Joshua Welch during the encampment.

206. Despite having actual knowledge of such abuse, CAP leadership failed to report the incident to the Florida Department of Children and Families until July 23, 2022, five days after the incident occurred.

207. CAP's violation of the mandatory reporting statute constitutes negligence per se, as the statute was designed to protect children like Cadet Hollon from abuse and exploitation, Cadet Hollon is within the class of persons the statute was intended to protect, the harm suffered by Cadet Hollon is of the type the statute was designed to prevent, CAP's violation of the statute was a proximate cause of Hollon's injuries; and the violation constitutes negligence as a matter of law.

208. CAP's failure to timely report allowed the perpetrator to remain in contact with other minor cadets and prevented timely intervention by child protective services.

209. As a direct and proximate result of CAP's nonfeasance, Cadet Hollon suffered damages including loss of educational and professional opportunities, Post-Traumatic Stress Disorder and/or symptoms, pain and suffering, emotional distress, severe depression, social withdrawal, intrusive thoughts, sleep disturbance, dissociation, shame and humiliation, identity confusion, and suicidal ideation, and self-harm, damage to reputation, ongoing medical treatment needs, loss of enjoyment of life, and other compensable harms.

WHEREFORE, Plaintiff Elizabeth Hollon demands judgment against Defendant CAP for compensatory damages and such other relief as this Court deems just and proper.

**COUNT V**
**VICARIOUS LIABILITY / RESPONDEAT SUPERIOR – WELCH'S CONDUCT**
*(Hollon v. CAP)*

210. Plaintiff Elizabeth Hollon realleges and incorporates by reference the allegations contained in paragraphs 1-30, 47-128, 151-175, as if fully set forth in this Count.

211. At all times material hereto, Joshua Welch was a cadet member of CAP participating in the organization's programs under CAP's authority and supervision.

212. During the July 16, 2022 encampment, Welch was assigned to the position of night watch cadre as part of his responsibilities within the CAP program.

213. Welch used his position of authority within CAP and access to the encampment facilities to conduct his battery on Cadet Hollon in the barracks.

214. Welch's assault and battery of Cadet Hollon occurred during the course and scope of CAP activities while he was performing his night watch cadre duties at a CAP-sponsored encampment.

215. CAP is vicariously liable for Welch's tortious conduct under the doctrine of *respondeat superior* and agency principles.

216. Alternatively, CAP is liable for Welch's conduct under theories of apparent authority, as CAP held Welch out as its agent and representative by appointing him as night watch cadre during the encampment.

217. CAP ratified Welch's conduct by failing to take appropriate disciplinary action, failing to immediately separate him from his victim and other minor cadets, allowing him to continue participating in CAP programs, and permitting him to teach leadership classes to other cadets after the assault.

218. As a direct and proximate result of the tortious conduct for which CAP is vicariously liable, Cadet Hollon suffered damages including loss of educational and professional opportunities, Post-Traumatic Stress Disorder and/or symptoms, pain and suffering, emotional distress, severe depression, social withdrawal, intrusive thoughts, sleep disturbance, dissociation, shame and humiliation, identity confusion, and suicidal

ideation, and self-harm, damage to reputation, ongoing medical treatment needs, loss of enjoyment of life, and other compensable harms.

WHEREFORE, Plaintiff Elizabeth Hollon demands judgment against Defendant CAP for compensatory damages and such other relief as this Court deems just and proper.

**COUNT VI**
**BREACH OF CONTRACT**
*(Hollon v. CAP)*

219. Plaintiff Elizabeth Hollon realleges and incorporates by reference the allegations contained in paragraphs 1-30, 47-128, 151-175, as if fully set forth in this Count.

220. CAP entered into contractual relationships with Cadet Hollon (by and through her parent Crawford) through Hollon's membership in the CAP cadet program.

221. As part of this contractual relationship, CAP regulations govern what CAP's duties to cadets (to include Hollon) are, as identified above in paragraphs 72, 76-88, 101, and 107.

222. CAP materially breached its contractual obligations to Cadet Hollon as outlined above in paragraphs 73-75, 89-100, 102-106, and 108-109.

223. Cadet Hollon performed her obligations under the contract by participating in good faith in CAP programs and activities.

224. CAP failed to perform their duties under the contract.

225. As consideration, Cadet Hollon was able to participate in CAP events, groups, and cadet programs, was a part of the CAP cadet community which provided identity and purpose, was offered leadership and scholastic opportunities to enhance college and career applications and was able to enlist as an E3 Air Force advanced enlistment rank.

226. As a direct and proximate cause of CAP's material breaches, Cadet Hollon suffered damages including loss of educational opportunities, loss of professional opportunities, and loss of community which foreseeably caused isolation and mental anguish.

WHEREFORE, Plaintiff Elizabeth Hollon demands judgment against Defendant CAP for compensatory damages and such other relief as this Court deems just and proper.

**COUNT VII**
**BREACH OF CONTRACT**
*(Crawford v. CAP)*

227. Plaintiff Cynthia Crawford realleges and incorporates by reference the allegations contained in paragraphs 1-30, 47-115, 129-150, 164-175, as if fully set forth in this Count.

228. CAP entered into contractual relationships with Cynthia Crawford through her membership in CAP and her respective positions within CAP.

229. As part of these contractual relationships, CAP regulations govern what CAP's duties to members (to include Crawford) are, as identified above in paragraphs 114, 116, 119, 138, 141, and 143.

230. CAP materially breached its contractual obligations to Crawford as outlined above in paragraphs 115, 117-118, 120-122, 139, 142, and 144.

231. Crawford performed her obligations under the contract by participating in good faith in CAP programs and activities.

232. CAP failed to perform their duties under the contract.

233. As consideration, Capt. Crawford was able to participate in CAP events, groups, and programs, was a part of the CAP community, was able to participate as a leader in cadet activities which provided invaluable connection and involvement in her children's lives and was offered leadership opportunities as Wing Legal and otherwise.

234. As a direct result of CAP's material breaches, Crawford suffered damages including loss of professional opportunities, damage to professional reputation, damage to reputation within the CAP community, loss of community and loss of an invaluable opportunity to connect with and bond with her children through CAP during their formative years.

WHEREFORE, Plaintiff Cynthia Crawford demands judgment against Defendant CAP for compensatory damages and such other relief as this Court deems just and proper.

**COUNT VIII**
**BATTERY**
*(Hollon v. Welch)*

235. Plaintiff Elizabeth Hollon realleges and incorporates by reference the allegations contained in paragraphs 1-46 and 151-158, as if fully set forth in this Count.

236. In December 2021, Defendant Welch intentionally touched Cadet Hollon by pinning down her hands down, using his body weight to restrain her, and forcibly inserting his penis in her vagina after she explicitly told him that she did not want to engage in intercourse with him.

237. Welch’s touching was both harmful and offensive.

238. Plaintiff did not consent to any sexual act with Welch.

239. As a direct and proximate result of Welch’s malfeasance, Cadet Hollon suffered damages including pain and suffering, emotional distress, shame and humiliation, and other compensable harms.

240. Welch's conduct was so egregious as to shock the conscience, demonstrated an intentional or grossly negligent disregard for Hollon’s safety and rights, and warrants punitive damages.

WHEREFORE, Plaintiff Elizabeth Hollon demands judgment against Defendant Welch for compensatory damages, punitive damages, and such other relief as this Court deems just and proper.

**COUNT IX**
**FALSE IMPRISONMENT**
*(Hollon v. Welch)*

241. Plaintiff Elizabeth Hollon realleges and incorporates by reference the allegations contained in paragraphs 1-46 and 151-158, as if fully set forth in this Count.

242. In December 2021, Defendant Welch intentionally and unlawfully restrained Cadet Hollon by pinning down her hands down and using his body weight to restrain her while he sexually battered her, which resulted in a deprivation of her liberty.

243. The restraint was against Hollon’s will and without legal authority to do so.

244. The restraint was unreasonable and unwarranted.

245. As a direct and proximate result of Welch’s malfeasance, Cadet Hollon suffered damages including pain and suffering, emotional distress, shame and humiliation, and other compensable harms.

246. Welch's conduct was so egregious as to shock the conscience, demonstrated an intentional or grossly negligent disregard for Hollon’s safety and rights, and warrants punitive damages.

WHEREFORE, Plaintiff Elizabeth Hollon demands judgment against Defendant Welch for compensatory damages, punitive damages, and such other relief as this Court deems just and proper.

**COUNT X**
**BATTERY**
*(Hollon v. Welch)*

247. Plaintiff Elizabeth Hollon realleges and incorporates by reference the allegations contained in paragraphs 1-71, 75-77 and 151-158, as if fully set forth in this Count.

248. On or about July 16, 2022, at a CAP encampment, Defendant Welch intentionally touched Cadet Hollon by forcibly grabbing her and forcibly exposing her genitalia.

249. Welch then photographed her genitalia with his phone while still touching Hollon.

250. Welch's touching was both harmful and offensive.

251. Plaintiff did not consent to be touched or photographed by Welch.

252. As a direct and proximate result of Welch's malfeasance, Cadet Hollon suffered damages including pain and suffering, emotional distress, shame and humiliation, and other compensable harms.

253. Welch's conduct was so egregious as to shock the conscience, demonstrated an intentional or grossly negligent disregard for Hollon's safety and rights, and warrants punitive damages.

WHEREFORE, Plaintiff Elizabeth Hollon demands judgment against Defendant Welch for compensatory damages, punitive damages, and such other relief as this Court deems just and proper.

**COUNT XI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
*(Hollon v. Welch)*

254. Plaintiff Elizabeth Hollon realleges and incorporates by reference the allegations contained in paragraphs 1-71, 75-77 and 151-158, as if fully set forth in this Count.

255. Welch engaged in extreme and outrageous conduct that exceeded all bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community.

a. Committing sexually battery and false imprisonment against Hollon in December 2021; and

b. Committing battery and taking one or more photos of Hollon's genitalia when she was a minor while at Encampment in July 2022.

256. Welch's conduct was intentional and designed to cause severe emotional distress or was undertaken with reckless disregard for the probability of causing such distress.

257. As a direct and proximate result of Welch's malfeasance, Cadet Hollon suffered damages including pain and suffering, emotional distress, shame and humiliation, and other compensable harms.

258. Welch's conduct was so egregious as to shock the conscience, demonstrated an intentional or grossly negligent disregard for Hollon's safety and rights, and warrants punitive damages.

WHEREFORE, Plaintiff Elizabeth Hollon demand judgment against Defendant Welch for compensatory damages, punitive damages, and such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: August 31, 2026

*/s/ Lisa D. Haba*

Lisa D. Haba (FBN 077535)
Maria E. Bryant (FBN 055332)
THE HABA LAW FIRM, P.A.
3112 W. Lake Mary Blvd.
Lake Mary, FL 32746
(844) 422-2529
lisahaba@habalaw.com
mariabryant@habalaw.com